**LACLEDE GAS COMPANY, Petitioners,**

v.

**FEDERAL ENERGY REGULATORY COMMISSION, Respondent.**

**No. 80–1850.**

United States Court of Appeals,
Fifth Circuit.*
Unit A

March 11, 1982.

Richard Littell, Scott M. DuBoff, Washington, D. C., for Laclede Gas Co.

Joshua Z. Rokach, Washington, D. C., for Federal Energy Regulatory Commission.

Eric A. Eisen, Birch, Horton, Bittner & Monroe, Washington, D. C., for Missouri Public Service Com'n intervenor on behalf of petitioner.

Irving Jacob Golub, W. Casey Wren, Thomas W. Pounds, Houston, Tex., for United Gas Pipe Line Co. intervenor on behalf of respondent.

---

* Former Fifth Circuit case, Section 9(1) of Public Law 96–452—October 14, 1980.

Before Charles CLARK, GARZA and SAM D. JOHNSON, Circuit Judges.

GARZA, Circuit Judge:

The issue presented in this case is whether the Federal Energy Regulatory Commission [1] has the authority or the duty under Section 4 of the Natural Gas Act [2] to review the allocation of a pipeline's purchased gas costs pursuant to its tariff-filed PGA clause when the pipeline applies for increased rates pursuant to Section 4 without proposing any "change" in the allocation procedure.

Intervenor United Gas Pipe Line Company is a major interstate pipeline company with purchase and delivery facilities located in Texas, Louisiana, Mississippi, Alabama, Florida and adjacent offshore waters. Its customers may be generally categorized as (1) direct sale customers—industrial and electric generation customers which consume the gas they purchase from United and (2) resale customers—the city gate and pipeline customers which resell their United purchases for ultimate consumption by residential, commercial, industrial and electric generation users. Under United's curtailment plan, a significant portion of United's resale jurisdictional customers are entitled to first priority with respect to United's sale of its natural gas. Conversely, a significant number of United's nonjurisdictional direct sale customers possess low priority under the curtailment plan. Petitioner Laclede Gas Company asserts that United has used its rolled-in costing methodology to enlarge its nonjurisdictional, direct sales at the expense or subsidization, through its tariff-filed purchase gas costs adjustment clause (PGA clause) [3], of United's high priority, jurisdictional customers.

According to Laclede, United can purchase large volumes of expensive, short-term gas [4] to meet the demands of its nonjurisdictional, low priority customers. United sells this gas to them at unregulated prices; however, the cost of this expensive gas is, through the PGA mechanism, averaged with the cost of gas United sells to its jurisdictional customers thereby increasing the rate United is permitted to charge its jurisdictional customers. Laclede contends that these very expensive gas supplies should be allocated to the market class that receives the enlarged deliveries rather than be allocated among all customers through the PGA device.

This proceeding was instituted on May 31, 1978, when United filed in Docket No. RP78–68 to increase the rates it charged for

---

1. The Federal Energy Regulatory Commission (FERC or the Commission) assumed most of the duties of its predecessor agency, the Federal Power Commission on October 1, 1977.

2. 15 U.S.C. § 717c (1976).

3. Because review of rates and practices is quite complicated and often cumbersome, the Commission has developed numerous time saving mechanisms in a laudable effort to ease regulatory burden. *See United Gas Pipe Line Co. v. FERC*, 649 F.2d 1110 (5th Cir. 1981). Since 1972 it has permitted pipelines to include purchased gas cost adjustment clauses (PGA clauses) in their commission-filed tariffs in order to facilitate recovery of gas costs, which are a major and volatile component of the cost of service of most pipelines. *Id.* United's basic PGA mechanism computes the average cost of all gas supplies and then assigns this average cost to each Mcf (thousand cubic feet) sold. This method is generally referred to as "rolled-

in" pricing. One commentator describes this principle as follows:

> Rolled-in allocation ... [is a] method of ratemaking wherein the cost of new facilities and new gas supplies are collected or "rolled in" with the cost of older facilities and gas supplies for the purpose of determining the cost of the entire system which is then prorated among all of the customers. This method is generally disadvantageous to old customers of an existing pipeline since the cost of new facilities and new gas supplies historically has risen steadily and the rolled-in rate method requires old customers to pay a higher price and bear part of the cost of an expansion from which they receive little increase in service.... H. Williams & C. Meyers, *Oil and Gas Terms* 508–09 (4th ed. 1976).

4. Specifically, Laclede refers to United's purchase of expensive gas under §§ 311 and 312 of the Natural Gas Policy Act, 15 U.S.C. §§ 3371, 3372 (Supp. II 1978).

the sale of natural gas. By order issued June 30, 1978, the Commission accepted the revised tariff sheets for filing, suspended their operation for five months subject to a possible refund upon final Commission decision, and set a date for a hearing to determine if the proposed changes were just and reasonable. On January 7, 1980, United filed a proposed settlement agreement that would have resolved all the issues in Docket No. RP78–68. In comments on the proposed settlement, however, Laclede, the Missouri Public Service Commission and others argued that United's method for allocation of purchased gas costs according to its PGA clause was discriminatory.

A Commission order of May 30, 1980, approved settlement of most issues in the case. The order, however, initiated an investigation under Section 5 of the NGA[5] to determine if United's tariff PGA clause was just and reasonable or resulted in unfair allocation of gas costs to United's customers. FERC's order specified that if any changes were to be made in the allocation of United's gas costs, they would be made effective only prospectively from the date of the Commission's final decision of the allocation issue. The Commission denied United's and Laclede's applications for rehearing by order of August 8, 1980.

United then petitioned this Court to review the Commission's orders alleging that FERC's decision to undertake an investigation into United's purchased gas costs allocation procedures was improper. After Laclede Gas Company was granted permission to intervene in this case, Laclede filed a petition for review of FERC's orders in the United States Court of Appeals for the District of Columbia Circuit. Laclede argued that the Commission's decision to investigate United's PGA tariff provisions solely under Section 5 of the NGA, rather than concurrently under Sections 4 and 5, was improper. Laclede objected to FERC's refusal to exercise its Section 4 authority because such precluded the Commission from ordering United to refund any amounts charged which might subsequently be found to have been unjustly or unreasonably assessed. By order of January 9, 1981, Laclede's appeal was transferred to the Fifth Circuit, and that case was consolidated with United's appeal. Following submission of briefs, United moved to withdraw its petition for review and such motion was granted August 3, 1981. Thus, the only issue before this Court on appeal is that raised by Laclede concerning the propriety of the Commission's decision to investigate the purchased gas costs allocation of United pursuant to Section 5 of the NGA and to effect any changes prospectively rather than to exercise its alleged Section 4 authority to order refunds.[6]

■ It is Laclede's position that when United filed for a rate change in RP78–68 pursuant to Section 4(d) of the Natural Gas Act, the Commission had the authority, and the duty, to require refunds under the parallel provisions of NGA Section 4(e) if it determined that the allocation to jurisdictional customers of United's cost of service,

5. 15 U.S.C. 717d (1976).

6. On the same day that this case was argued before this panel, the Administrative Law Judge issued his Initial Decision pursuant to the ongoing § 5 investigation into the alleged unfairness of United's effective PGA clause. The ALJ's finding that United's rolled-in costing methodology reflected in its PGA clause was not unjust, unreasonable or unduly discriminatory arguably mooted this case since any relief which this court could grant—a remand to the Commission to consider Laclede's claims under its § 4 authority and order refunds if the clause was found to be unjust— was rendered meaningless by the ALJ's finding. See Hodge v. Seiler, 558 F.2d 284, 289 (5th Cir. 1977). We note, however, that the ALJ's deci-

sion is subject to appeal to the Commission and ultimately to the Court of Appeals, and thus, is not so final as to render the case moot. The possibility, or probability, that the outcome of a separate administrative proceeding will provide the litigant with similar relief—in this case, the consideration of the fairness of United's PGA clause—does not necessarily render the case moot. See generally, El Paso Electric Co. v. FERC, 667 F.2d 462; (5th Cir. 1982). Laclede can continue to pursue its claims of unfairness in the § 5 proceeding currently awaiting decision by the Commission and may ultimately appeal to this Court as it proceeded similarly in United Gas Pipe Line Co. v. FERC, 649 F.2d 1110 (5th Cir. 1981).

including gas costs pursuant to its Purchased Gas Adjustment (PGA) Clause, was unjust and unduly discriminatory. Laclede argues that when United initiated its Section 4(d) rate change filing on May 31, 1978, it laid open to challenge and subject to the Commission's refund authority under Section 4(e) all aspects of its proposed rate schedule, including the propriety of United's PGA Clause.

United, on the other hand, argues that the Commission's investigation can only be conducted, if at all, under Section 5 of the NGA. United contends that Section 4 governs investigations only into tariff provisions which are modified by a rate filing. An investigation into approved tariff provisions which are not modified by a pipeline's Section 4 filing may only proceed under Section 5 of the NGA. United argues that because it has not proposed any change in the PGA procedures contained in its tariff, the Commission is only authorized to act under Section 5.

On appeal, the Commission has taken the position that it has discretionary authority under Sections 4 and 5 to consider the reasonableness of United's PGA mechanism. In this case, however, the Commission elected to act prospectively under Section 5 only since the Commission had previously accepted United's "typical" PGA provision and, therefore, the Commission reasoned that United should not be penalized for its reliance on the Commission's acceptance.

The relationship between Sections 4 and 5 of the NGA was described by the Supreme Court in *United Gas Pipe Line Co. v. Mobile Gas Corp.*, 350 U.S. 332, 76 S.Ct. 373, 100 L.Ed. 373 (1956). In the words of Justice Harlan writing for the unanimous court,

> The powers of the Commission are defined by §§ 4(e) and 5(a). The basic power of the Commission is that given it by § 5(a) to set aside and modify any rate or contract which it determines, after hearing, to be "unjust, unreasonable, unduly discriminatory, or preferential." This is neither a "rate-making" nor a "rate-changing" procedure. It is simply the power to review rates and contracts made in the first instance by natural gas companies and, if they are determined to be unlawful, to remedy them. Section 5(a) would of its own force apply to *all* the rates of a natural gas company, whether long-established or newly changed, but in the latter case the power is further implemented by § 4(e). All that § 4(e) does, however, is to add to this basic power, in the case of a newly changed rate or contract (except "industrial" rates), the further powers (1) to preserve the status quo pending review of the new rate by suspending its operation for a limited period, and (2) thereafter to make its order retroactive, by means of the refund procedure, to the date the change became effective. The scope and purpose of the Commission's review remain the same—to determine whether the rate fixed by the natural gas company is lawful.

*Id.* at 341, 76 S.Ct. at 379, 100 L.Ed. at 385.

The extent to which the filing for an increase in rates under Section 4 opens up a pipeline's rate structure or schedules to Commission scrutiny was reflected upon by the Supreme Court in *FPC v. Tennessee Gas Transmission Co.*, 371 U.S. 145, 83 S.Ct. 211, 9 L.Ed.2d 199. The Court stated,

> [A]n analysis of the policy of the Act clearly indicates that a natural gas company initiating an increase in rates under § 4(d) assumes the hazards involved in that procedure. It bears the burden of establishing its rate schedule as being "just and reasonable."

*Id.* at 152, 83 S.Ct. at 215, 9 L.Ed.2d at 204–05. We hold that when United filed pursuant to Section 4 to increase its rates, it assumed the hazard and opened to Commission scrutiny the propriety of the PGA clause contained within its rate schedule.

The PGA mechanism is a time saving method allowing pipelines to generally increase rates to reflect the increased costs of purchased gas. Twice a year, United is permitted to adjust its rates to reflect prior and projected increased gas costs; and in so doing, avoid the necessity of filing a full

blown rate case.[7] Absent the PGA device, the only manner in which United could reflect increased gas costs in its rate structure would be to make a comprehensive Section 4 filing such as is involved presently. In such a case, there would be no doubt that United would be subject to the Commission's § 4(e) refund authority. Furthermore, where the PGA mechanism is such an integral part of the manner in which rates are charged, when the very rates being charged are allocated by application of the PGA clause, its provisions are necessarily a part of a filing for new rates subject to Section 4 scrutiny. Included within each rate filing is a PGA tariff provision which together with the new rates will effectuate the change in cost of gas experienced by the pipeline's customers. Thus, the Commission, which is authorized under Section 4 to review rates for just and reasonableness and to order refunds where a pipeline files for a change in its rates, is similarly vested with the power to consider as part of the entire rate change the PGA device.[8]

█ Having found that the Commission was empowered to consider the reasonableness of United's PGA clause under Section 4 when United filed for its general rate increase, we must now determine if the Commission properly elected to act pursuant to its prospective Section 5 authority only. In its order, the Commission articulated the following reasons for its decision to proceed prospectively:

A hearing was ordered in this docket pursuant to both Sections 4 and 5 of the Natural Gas Act, and we conclude that the hearing should continue under Section 5 in order to determine the alleged unfairness of United's currently effective PGA clause. Should there be evidence that United's allocation method results in

rates which are unduly discriminatory or preferential, then the PGA clause must be modified to ensure that United's rates are just and reasonable. *No party disputes that United has allocated costs in accordance with its approved PGA clause. As a result, any change in allocation of purchased gas costs should become effective only prospectively upon final Commission decision.* (emphasis added).

Whether the Commission decides to exercise its Section 4 refund authority is determined by the agency's consideration of the equities. *Estate of French v. FERC*, 603 F.2d 1158, 1163 (5th Cir. 1979); *Gillring Oil Co. v. FERC*, 566 F.2d 1323, 1325–26 (5th Cir. 1977). In this case, the record reflects that United's PGA clause was a "typical" tariff provision within the industry. Furthermore, the Commission had permitted United to use such a provision since 1972. As we read the Commission's order, it is apparent that the Commission believed that United should not be penalized for its allocation of costs according to its accepted "typical" PGA clause and that a Section 5 investigation was more equitable to all parties involved. Accordingly, we find no error in the Commission's decision to proceed pursuant to Section 5 of the NGA only.

AFFIRMED.

---

7. United admits that it is subject to the Commission's § 4 authority when it files semi-annually in accordance with its PGA provisions. Laclede, however, asserts that it has been unable to obtain consideration of its refund claims in those proceedings.

8. The power of the Commission is not to retroactively change the PGA mechanism but rather to retain control over new rates previously collected and order refunds if such are found unjust or unreasonable.