**LACLEDE GAS COMPANY and United Gas Pipe Line Co., Petitioners,**

v.

**FEDERAL ENERGY REGULATORY COMMISSION, Respondent.**

No. 83–4227.

United States Court of Appeals, Fifth Circuit.

Jan. 13, 1984.

Zuckert, Scoutt, Rasenberger & Delaney, Marvin S. Lieberman, William H. Callaway, Jr., Washington, D.C., for Laclede Gas Co.

Irving Jacob Golub, Cecil W. Talley, Houston, Tex., for United Gas Pipe Line Co.

Federal Energy Reg. Comm., Joanne Leveque, Washington, D.C., for Federal Energy Regulatory Commission.

Robert W. Kneisley, Richard A. Solomon, David D'Alessandro, Washington, D.C., for the Public Service Commission of the State of New York.

Gary E. Guy, Washington, D.C., for Elizabethtown Gas Co. and the Brooklyn Union Gas Co.

David B. Robinson, Washington, D.C., for State of Louisiana.

Robert W. Clark, Washington, D.C., for the Process Gas Consumers Group, the American Iron and Steel Institute, and the Georgia Industrial Gas Group.

Christopher T. Boland, William A. Williams, Washington, D.C., for Texas Gas Transmission Corp.

Before CLARK, Chief Judge, THORNBERRY and HIGGINBOTHAM, Circuit Judges.

THORNBERRY, Circuit Judge:

The question presented in this case is whether United Gas Pipe Line Company ("United") may "roll-in" to all of its sales the cost of natural gas purchased under Sections 311(b) and 312 ("Sections 311 and 312") of the Natural Gas Policy Act of 1978 ("NGPA"), 15 U.S.C. §§ 3371(b), 3372. Because we agree with the Federal Energy Regulatory Commission ("FERC" or "the Commission") that rolled-in pricing of Sections 311 and 312 gas is not unduly discriminatory and does not violate established Commission precedent, we affirm FERC's orders on the roll-in issue in this case.[1]

**I.**

This proceeding began on May 31, 1978 when United filed with FERC a proposed increase in the rates[2] it charged its natural gas customers. The Commission suspended the rate increase in order to consider the lawfulness of the rates. United Gas Pipe Line Co., 3 F.E.R.C. ¶ 61,306 (1978). On May 30, 1980, FERC substantially approved a settlement filed by United. 11 F.E.R.C. ¶ 61,234 (1980). The settlement resolved most of the outstanding issues. One of the remaining issues[3] was whether United

1. Opinion No. 159, entitled Opinion and Order Affirming in Part and Modifying in Part Initial Decision and Establishing Just and Reasonable Rates, issued in United Gas Pipe Line Company, Docket No. RP78–68, 22 F.E.R.C. ¶ 61,126 (February 4, 1983); Opinion No. 159–A, entitled Order on Rehearing, 23 F.E.R.C. ¶ 61,029 (April 6, 1983) (hereinafter "Opinion Nos. 159 and 159–A").

2. The rates under consideration are those that were in effect from December 1, 1978 through January 1, 1981. After January 1, 1981, United's rates were superseded by new rates.

3. Another remaining issue was whether United should be permitted to pass on to its customers the cost of separating producer-owned liquids from the natural gas United purchased. FERC held against United in the same orders in which it decided the rolled-in issue, Opinion Nos. 159 and 159–A. United petitioned for review in this court. At oral argument, counsel for FERC informed the court that an agreement in principle had been reached between United and the Commission concerning the separations charge. Subsequently, both United and FERC have advised the court that such agreement in principle has been reached, and have requested that the court defer decision on this part of the

should be allowed to use rolled-in pricing to distribute among its customers the cost of Sections 311 and 312 gas. The Commission instituted an investigation under Section 5 of the Natural Gas Act, 15 U.S.C. § 717d, to determine if United's allocation of its gas costs was just and reasonable.[4]

One of the primary contenders in the Section 5 investigation was Laclede Gas Company, the petitioner here. Laclede is a Missouri public utility which distributes natural gas to residential, commercial and industrial customers in the St. Louis area. Laclede purchases all of its natural gas from Mississippi River Transmission Corporation, which, in turn, purchases most of its supply from United.

Intervenor United is a major interstate pipeline involved in the transportation and sale of natural gas. United serves two markets: jurisdictional and nonjurisdictional customers. Jurisdictional customers are those whose rates are regulated by FERC;[5] they include interstate pipeline companies such as Laclede's supplier, Mississippi, and local gas distribution companies. Jurisdictional customers purchase their gas for resale. Nonjurisdictional customers are those whose rates are largely unregulated;[6] they consist mostly of direct end-use industrial customers who do not resell the gas, but use it directly for their own purposes.

Since the natural gas shortages of the 1970's, United has operated under various curtailment plans for determining distribution of available gas supplies among its customers.[7] The curtailment plan in effect at the time of the hearing here provided for three priority categories based on end-use

of gas: Category I included residential and commercial consumers; Category II consisted of industrial customers who used gas for feedstock purposes; and Category IV[8] was composed of industrial buyers who utilized gas for all other purposes, including the generation of electricity. Ninety-seven percent of United's nonjurisdictional customers were placed in the lowest priority category. Fifty-eight percent of the jurisdictional users were in Category I, and forty-two percent of the jurisdictional customers are low priority industrial users. Under its curtailment plan, United was required to satisfy all of the needs of the higher priority categories before it could supply the low priority nonjurisdictional users. *United Gas Pipe Line v. Federal Energy Regulatory Commission*, 649 F.2d 1110, 1112 (5th Cir.1981).

In determining the allocation of the cost of gas it purchases to supply its customers, United follows the practice of rolled-in pricing. This means that each customer pays the average cost of all the gas that is purchased during a particular period. No attempt is made to connect any specific purchase of gas to a specific customer; all share gas acquisition costs equally. *See* H. Williams & C. Meyers, *Oil and Gas Terms* 508–09 (4th ed. 1976) *quoted in Laclede Gas Co. v. Federal Energy Regulatory Commission*, 670 F.2d 38, 39 (5th Cir.1982).

Traditionally, the Commission has endorsed the practice of rolled-in pricing unless it would lead to an unfair result. *United Gas Pipe Line v. Federal Energy Regulatory Commission*, 649 F.2d 1110, 1115 (5th Cir.1981), *quoting* Colorado Interstate Gas

---

case. Accordingly, we render no decision on the liquid separation charge issue at this time.

4. *See Laclede Gas Co. v. Federal Energy Regulatory Commission*, 670 F.2d 38 (5th Cir.1982) (holding that the Commission acted within its authority when it decided that any relief in this case would be prospective only).

5. 15 U.S.C. § 717(b).

6. The Natural Gas Act exempts these customers from FERC's jurisdiction, 15 U.S.C. § 717(b), and the states in which United does business do not regulate its rates.

7. *See Southern Natural Gas Co. v. Federal Power Commission*, 543 F.2d 530 (5th Cir. 1976), *supplemented* 547 F.2d 826 (1977), where this court approved the plan in effect at the time of the rate filing in this case. United's current curtailment plan is before this court in *Mississippi Power & Light Co. v. Federal Energy Regulatory Commission*, No. 82–4444.

8. Category III, consisting of gas used to generate electricity, was consolidated with Category IV in United Gas Pipe Line Co., Opinion No. 647, 49 F.P.C. 179, 195 (1973).

Co., 19 F.P.C. 1012, 1021 (1958). *See also Battle Creek Gas Co. v. Federal Power Commission,* 281 F.2d 42, 46 (D.C.Cir.1960). During the natural gas shortages of the 1970's, FERC allowed an exception to the rolled-in pricing practices for emergency gas purchases. Under Commission regulations, 18 C.F.R. §§ 2.68 and 157.29, pipelines were permitted to make short term emergency gas purchases without prior Commission approval. United rolled-in the prices for this expensive emergency gas to the costs of all its customers. The high priority customers complained that the rolled-in allocation methodology unfairly discriminated against them by forcing them to subsidize high-priced gas purchased to fill the needs of low priority users, who otherwise would have been curtailed. Both the Commission and this court agreed that the rolled-in allocation of emergency-gas unfairly discriminated against high priority users in violation of the Natural Gas Act's prohibition on unduly discriminatory rates. United Gas Pipe Line Company, Docket No. RP72–133 (PGA 77–2), 8 F.E.R.C. ¶ 61,051 (1979) aff'd *United Gas Pipe Line Co. v. Federal Energy Regulatory Commission,* 649 F.2d 1110 (5th Cir.1981) *reh'g denied,* 664 F.2d 289 (1981).

After enactment of the NGPA in 1978 and before this court rendered its decision in the *United* case, United discontinued making emergency purchases and began making high-priced purchases under NGPA Section 311. Sections 311 and 312 authorize intrastate pipelines to sell natural gas to interstate pipelines like United, or to assign them contractual rights to receive surplus gas. Laclede argues in this case that the Sections 311 and 312 gas was merely a substitute for the prior purchase of emergency gas and that therefore rolled-in pricing of Sections 311 and 312 gas should be prohibited under the *United* rationale.

The Administrative Law Judge found that rolled-in costing of Sections 311 and 312 gas was not unduly discriminatory. United Gas Pipe Line Co., 16 F.E.R.C. ¶ 63,044 (September 4, 1981). FERC agreed in Opinion Nos. 159 and 159–A.

## II.

An agency must either conform to its prior precedent or explain its reasoning for departure from that precedent. *Mississippi Valley Gas Co. v. Federal Energy Regulatory Commission,* 659 F.2d 488, 506 (5th Cir.1981). Laclede's argument essentially is that the similarities between emergency gas and Sections 311–312 gas are such that the allowance of rolled-in pricing in this case violates past precedent as established by the *United* case. We do not agree.

First of all, the *United* case by its terms referred only to emergency gas transactions. Furthermore, although similarities do exist between the emergency program and Sections 311–312 gas, FERC correctly stated in Opinion No. 159–A that the policies behind the two programs differ substantially. Emergency gas may be purchased only when the pipeline is in curtailment, when curtailment is imminent, or when the pipeline must meet a sudden unexpected increase in demand. 18 C.F.R. § 157.46(a). By contrast, Sections 311 and 312 gas may be purchased at any time. The House Ad Hoc Committee on Energy stated in reference to the House precursor to NGPA Sections 311–312: "The amendment facilitates development of a national natural gas transportation network without subjecting intrastate pipelines, already regulated by State agencies, to FPC regulation over the entirety of their operations." H.R. Rep. No. 543, 95th Cong., 1st Sess. 45 (1977), U.S.Code Cong. & Admin.News 1978, pp. 7659, 7712. *See* Ringleb, *Natural Gas Producer Price Regulation Under the NGPA: Regulatory Failure, Alternatives, and Reform,* 20 Houston L.Rev. 709, 722 n. 66 ("The most obvious intent of Congress [in § 311] was to provide a mechanism allowing the surplus gas in the intrastate market to be sold to the interstate market.") *See also* Moody & Garten, *The Natural Gas Policy Act of 1978: Analysis and Overview,* 25 Rocky Mtn.Min.L.Inst. 2–1, 63 (1979). While the emergency gas program was designed to allow transfer of gas between the intrastate and interstate markets in times

of shortage, the Sections 311 and 312 program was part of a more expansive Congressional effort in the NGPA to create a single national market. See S.Rep. No. 95–436, 95th Cong., 1st Sess. 21–22 (1977); H.R. Rep. No. 95–543 (Part 4), 95th Cong., 1st Sess. 392 (1977). The fact that the NGPA retained emergency gas provisions in Section 303 along with Sections 311 and 312 is further evidence that the two programs embody distinct policies.

As FERC points out, the statutory time frames of emergency gas and Sections 311–312 gas also differ. Emergency gas transactions are limited to sixty days. 18 C.F.R. § 157.48(b). The initial Section 311 gas purchases may be as long as two years, and additional two year extensions may be authorized. Section 312 does not limit the duration of an assignment under Section 312 of an intrastate pipeline's right to purchase surplus gas.

Other distinctions between emergency gas and Sections 311–312 gas are thoroughly explicated by both the Administrative Law Judge and by FERC. Because Sections 311 and 312 purchases were intended to do more than forestall temporary emergency situations, the Commission concluded that Sections 311–312 gas is an integral part of United's overall supply. Unlike emergency gas, Sections 311–312 gas is not purchased solely for the benefit of one priority group in the curtailment plan. Thus FERC determined it to be just and reasonable for the cost of Sections 311–312 gas to be rolled-in to the costs of all customers. See United Gas Pipe Line v. Federal Energy Regulatory Commission, 649 F.2d 1110, 1115 (5th Cir.1981). See also Battle Creek Gas Co. v. Federal Power Commission, 281 F.2d 42, 46 (D.C.Cir.1960). Rather than an unexplained departure from past precedent, we find the Commission's decision to be a reasoned explanation of why the differences between emergency gas and Sections 311–312 gas justify rolled-in pricing in the 311–312 case. Accordingly, Order Nos. 159 and 159–A are

AFFIRMED.