904 F.2d 1469
 NATURAL GAS PIPELINE COMPANY OF AMERICA, Petitioner,
v.
FEDERAL ENERGY REGULATORY COMMISSION, Respondent,
Public Service Company of Colorado; Western Gas Supply
Company; Cheyenne Light Fuel and Power Company; The Gates
Rubber Company; The City of Colorado Springs; Questar
Pipeline Company; KN Energy, Inc., Intervenors.
 No. 88-1930.
 United States Court of Appeals,
Tenth Circuit.
 May 31, 1990.
 
 Paul Korman (Paul W. Mallory, Paul E. Goldstein, and Joseph M. Wells, Lombard, Illinois; and J. Curtis Moffatt of Gardner, Carton & Douglas, Washington, D.C., with him on the briefs) Washington, D.C. for petitioner.
 Robert H. Solomon, Atty. (Catherine C. Cook, Gen. Counsel, and Jerome M. Feit, Sol., with him on the briefs), Federal Energy Regulatory Commission, Washington, D.C. for respondent.
 William W. Brackett (Rebecca N. Noecker, Vice President and Asst. Gen. Counsel, Colorado Interstate Gas Co., Colorado Springs, Colo., Daniel F. Collins, Sr. Vice President, Donald C. Shepler, Gen. Atty., and Kathrine L. Henry, Sr. Atty., Colorado Interstate Gas Co., Washington, D.C., with him on the briefs), Washington, D.C., for intervenor.
 Before LOGAN and BRORBY, Circuit Judges, and BRATTON,* District Judge.
 BRORBY, Circuit Judge.
 
 
 1
 Petitioner Natural Gas Pipeline Co. of America (NGPL) appeals a Federal Energy Regulatory Commission (FERC, or Commission) decision prospectively eliminating the minimum bill provision in NGPL's gas supply contract with Colorado Interstate Gas Co. (CIG). Specifically, NGPL claims FERC erred in eliminating the provision prospectively from November 18, 1987, the date of its order, rather than retroactively to September 28, 1985, the date CIG's filed rates went into effect subject to refund. CIG, an intervenor in this action, argues that, under the relevant provision of the Natural Gas Act, 15 U.S.C. Secs. 717-717w, its minimum bill may be eliminated only prospectively. We review FERC's decision pursuant to 15 U.S.C. Sec. 717r and affirm.
 
 
 2
 The FERC decision at issue here is only one of several issues raised in a ratemaking proceeding initiated by CIG and resolved by FERC in Opinion No. 290, Colorado Interstate Gas Co., 41 FERC p 61,179 (1987), aff'd in part & denied in part on reh'g, Opinion No. 290-A, 43 FERC p 61,089 (1988). The background of that proceeding and the context in which the issue appealed herein arose are discussed in our opinion in Colorado Interstate Gas Co. v. FERC, 904 F.2d 1456, which is also being filed today. Thus, we confine our discussion in this opinion to the single issue on appeal.
 
 
 3
 In Opinion No. 290 FERC held simply that it would not eliminate CIG's minimum bill retroactively, concluding: "Therefore, ... [the] minimum bill should be eliminated prospectively from the date of this order." 41 FERC p 61,179, at 61,466.[1] NGPL sought rehearing of this decision, which FERC denied in Opinion No. 290-A. 43 FERC p 61,089, at 61,279. FERC affirmed its initial decision, explaining that it was appropriate to eliminate the minimum bill prospectively because the new rate design (modified fixed variable, or MFV, method) it was requiring CIG to adopt was also being imposed prospectively. Id. at 61,278-79. FERC noted that no party had sought rehearing of the decision to impose the MFV design prospectively. Id. at 61,279 n. 39.
 
 
 4
 Sections 4 and 5 of the Natural Gas Act, 15 U.S.C. Secs. 717c and 717d, authorize FERC's "plenary review of the contracts and rate schedules established by [natural gas] companies." Colorado Interstate Gas Co. v. FERC, 791 F.2d 803, 806 (10th Cir.1986) (CIG I ), cert. denied, 479 U.S. 1043, 107 S.Ct. 907, 93 L.Ed.2d 857 (1987). Section 5 authorizes FERC, at any time and "upon its own motion" or that of third persons, to hold a hearing on the reasonableness of any rate, practice, or contract of a natural gas company and to "determine the just and reasonable rate, ... practice, or contract to be thereafter observed and in force." 15 U.S.C. Sec. 717d(a) (emphasis added). As the courts have affirmed, the plain language of this section authorizes FERC to order only prospective changes to the rates or practices of pipeline companies. See Atlantic Refining Co. v. Public Service Comm'n, 360 U.S. 378, 389, 79 S.Ct. 1246, 1253, 3 L.Ed.2d 1312 (1959); United Gas Pipe Line Co. v. Mobile Gas Service Corp., 350 U.S. 332, 341, 76 S.Ct. 373, 379, 100 L.Ed. 373 (1956); CIG I, 791 F.2d at 806.
 
 
 5
 Hearings held pursuant to Sec. 4, on the other hand, are triggered by a natural gas company's filing of a new rate schedule. Section 4, unlike Sec. 5, provides that FERC may order refunds of any increased rate ultimately held unjust and unreasonable. 15 U.S.C. Sec. 717c(e).[2] Section 4 does not require FERC to order refunds; it merely authorizes FERC in its discretion to order refunds effective as of the date the proposed rate change became effective. Belco Petroleum Corp. v. FERC, 589 F.2d 680, 686 (D.C.Cir.1978); Placid Oil Co. v. Federal Power Comm'n, 483 F.2d 880, 905 (5th Cir.1973), aff'd sub nom. Mobil Oil Corp. v. Federal Power Comm'n, 417 U.S. 283, 94 S.Ct. 2328, 41 L.Ed.2d 72 (1974). The D.C. Circuit has termed the Sec. 4(e) refund procedure the "only statutory exception to the [Act's general] rule prohibiting retroactive rate changes." East Tenn. Nat. Gas Co. v. FERC (East Tennessee), 863 F.2d 932, 941-42 (D.C.Cir.1988) (Wald, C.J.). This exception, according to the court, "arises in order to accommodate the realities of administrative delay." 863 F.2d at 942.
 
 
 6
 Neither NGPL nor FERC cites the provision of the Natural Gas Act that governs FERC's decision to eliminate CIG's minimum bill prospectively. However, both address the decision in terms of its reasonableness; thus, we assume both considered it a discretionary action arising under Sec. 4. NGPL faults FERC's prospective elimination of the bill, first, for its inconsistency with Commission precedent and policy and, second, for the absence of an adequate explanation of the departure from precedent. FERC's argument in support of prospective elimination is based on the asserted reasonableness of deleting the minimum bill simultaneously with implementing the MFV method. Implicit in both arguments is the assumption that FERC possessed the authority to order retroactive elimination of the minimum bill and thus that Sec. 4 of the Act applies.
 
 
 7
 CIG, as intervenor, contends variously that prospective elimination is consistent with Commission practice and with sound policy, and that the minimum bill can be eliminated only prospectively under Sec. 5 of the NGA and certain court decisions. These arguments are necessarily alternative (although CIG does not present them as such), because the first assumes the application of Sec. 4 and the second expressly relies on Sec. 5.
 
 
 8
 For the reasons expressed herein, we hold that Sec. 5 of the Natural Gas Act, 15 U.S.C. Sec. 717d, governs FERC's order eliminating CIG's minimum bill. We therefore find it unnecessary to address NGPL's and FERC's arguments relating to FERC's discretion under Sec. 4.
 
 
 9
 FERC determined to eliminate CIG's minimum bill after conducting a hearing to review certain rate changes filed by CIG pursuant to Sec. 4. CIG proposed no change to its minimum bill in that rate change request. Indeed, CIG has strenuously maintained in this case and in case No. 88-1932 that it "proposed no change to its longstanding minimum bill," but rather that FERC undertook a review of the minimum bill on its own motion. FERC agrees, conceding in Opinion No. 290-A that it and NGPL bore the burden of proof concerning the minimum bill "because CIG proposed no change to its minimum bill" in its Sec. 4 rate filing. 41 FERC p 61,179, at 61,465.[3]
 
 
 10
 Several courts including this one have recognized a narrow expansion of Sec. 4's provision for retroactive relief. As explained by the D.C. Circuit, Sec. 4
 
 
 11
 permit[s] retroactive adjustments not only to proposed rate changes which had been allowed to go into effect pending approval, but also to some existing rate components that the pipeline had not proposed to change but which the Commission found could not coexist with proposed changes without producing an unjust or unreasonable rate.
 
 
 12
 East Tennessee, 863 F.2d at 942 (emphasis added) (citing Cities of Batavia, Naperville, etc. v. FERC, 672 F.2d 64, 76-77 (D.C.Cir.1982)) (Wald, J.). Other courts, also relying on Batavia, have expressed this rule in terms of whether the unchanged rate component is "integral" to the proposed rate change. E.g., CIG I; Florida Gas Transmission Co. v. FERC, 741 F.2d 1307, 1311 (11th Cir.1984); North Penn Gas Co. v. FERC, 707 F.2d 763, 769 (3d Cir.1983); cf. Laclede Gas Co. v. FERC, 670 F.2d 38, 41-42 (5th Cir.1982).
 
 
 13
 In East Tennessee the court reversed a FERC decision eliminating a minimum bill retroactively. Under circumstances resembling those of this case, East Tennessee Natural Gas Co. had proposed to change its rate design, but had proposed no change in its minimum bill. The rate change was approved by settlement, but after a separate hearing the Commission held the minimum bill was unjust and unreasonable and ordered it eliminated retroactively. 863 F.2d at 937. The D.C. Circuit panel reversed, holding that FERC could not order the bill's retroactive elimination because its unlawfulness stemmed from a new FERC policy which, under Sec. 5 of the Act, could be implemented only prospectively. 863 F.2d at 945.
 
 
 14
 East Tennessee criticized FERC's interpretation of Batavia and of Batavia 's holding concerning the scope of Sec. 4. Expressing concern that FERC and certain courts, including CIG I, had construed Batavia too broadly (and conceding at least partial responsibility for those interpretations, 863 F.2d at 943), the court stressed that "the Batavia interpretation of Sec. 4 was not designed to undermine the basic principle that pipelines are entitled to rely on filed rates." 863 F.2d at 942 (emphasis in original). In order for retroactive relief from existing, approved rates to be warranted, the court held, "the unlawful result must arise from the interaction between proposed and existing rate components." 863 F.2d at 942 (emphasis added). The court explained:
 
 
 15
 Only where the interaction will create results that are unjust or unreasonable under existing Commission policy as it applies to the pipeline at the time it files its proposed rate changes does the pipeline forego that reliance interest [on filed rates] and invite retroactive changes to existing rates.
 
 
 16
 Id. at 943 (emphasis in original). In the East Tennessee panel's opinion, FERC and the CIG I court erred in concluding that a proposed rate change opened the door to retroactive changes to any "integral" portion of the existing rate structure. See id. (citing 791 F.2d at 807).
 
 
 17
 It is the following discussion in CIG I to which the D.C. Circuit refers:
 
 
 18
 Section 4 of the Natural Gas Act gives the Commission broad authority to scrutinize new rates filed by a gas company to insure that such rates are just and reasonable. The Commission may review a gas company's rate structure to insure that all parts of the structure--both old and new--operate together to produce just and reasonable rates. See City of Batavia v. Federal Energy Regulatory Comm'n, 672 F.2d 64, 75-77 (D.C.Cir.1982). By filing the rate increase, a gas company assumes the risk of having to justify its entire rate structure, including integral provisions of that structure which the company does not propose to change....
 
 
 19
 CIG filed a rate increase under Sec. 4, but the rate filing proposed no change in the minimum bill. The propriety of subjecting the minimum bill to review under Sec. 4 requires a finding that the provision is integral to the rate structure of CIG.
 
 
 20
 791 F.2d at 807 (citations omitted). After disposing of a related issue not relevant here, the CIG I panel concluded:
 
 
 21
 In summary, the minimum bill was subject to Sec. 4 review as an integral part of CIG's rate structure [and] the Commission preserved its power to order refund in its suspension order.... Therefore, we find that the Commission acted within its authority in ordering retroactive modification of CIG's minimum bill under Sec. 4 of the Natural Gas Act.
 
 
 22
 791 F.2d at 809.
 
 
 23
 The flaw in the East Tennessee panel's criticism of CIG I is that it fails to take account of the factual circumstances of CIG I. CIG I 's holding was based on the ALJ's finding that "the minimum bill provisions are an integral part of the rate increase." 791 F.2d at 807 (quoting 25 FERC p 63,012, at 65,015). As the ALJ and the CIG I panel stressed, CIG's proposed rate increase would have increased charges under the minimum bill. 791 F.2d at 807 ("charges flowing from ... the minimum bill provisions were also affected "; "proposed rate increase inflates the impact of the minimum bill"; "CIG's rate increase elevated the impact of the minimum bill"). Thus, it was not simply integrality of the minimum bill to the existing rate structure that the CIG I court found significant, but its integrality to the requested rate increase.
 
 
 24
 While the holding in CIG I, like the D.C. Circuit's holding in Batavia, may not have been crystal clear, it does not "undermine the basic principle that pipelines are entitled to rely on filed rates" any more than Batavia did. 863 F.2d at 942. We view the decisions in CIG I and East Tennessee as entirely consistent. Both opinions guide our decision today.
 
 
 25
 Here, unlike in CIG I, CIG's proposed rate increase would have had no impact on its minimum bill. Whereas the minimum bill at issue in CIG I encompassed both fixed and variable costs (FERC in that proceeding eliminated the variable costs portion of the minimum bill), only fixed costs were recovered by the minimum bill in contention in this case. As CIG explains,
 
 
 26
 CIG proposed no change in the tariff sections which provide for the fixed-cost minimum bill. CIG also proposed no change in the level of commodity purchases for which [NGPL] must pay the fixed cost portion of the Commodity charges.... CIG proposed changes in the level of its Demand Charges to [NGPL] ... but that is wholly unrelated to the minimum bill, which applies to the fixed costs in the commodity charges.
 
 
 27
 Thus, CIG's proposed rate increase would not have increased the charges recovered via its minimum bill, as was the case in CIG I.[4]
 
 
 28
 FERC did not eliminate CIG's fixed-cost minimum bill because it was "integral" to the proposed rate change or because of the unjust and unreasonable effect of its interaction with the rate changes. Rather, FERC decided to eliminate the provision because FERC's policy with respect to minimum bills had changed since CIG's bill was approved, see our opinion in Case No. 88-1932, and because a minimum bill is unnecessary under the MFV rate design, which FERC required CIG to implement as a result of this proceeding. See Opinion No. 290, 41 FERC p 61,179, at 61,466.
 
 
 29
 We hold that the Commission has power to grant retroactive relief from an existing rate component only where the provision is integral to the proposed rate increase, CIG I, 791 F.2d at 807-08, or "where the interaction between [the existing component] and new components of a revised rate will make the operation of the [existing component] itself unjust or unreasonable." 672 F.2d at 76-77 (emphasis added). Thus, it is the effect of the interaction between the new and existing rate provisions, or the integrality of the existing component to the new rate structure, that triggers Sec. 4 review. CIG's minimum bill was eliminated here not because it was integral to the rate increase or because the effect of its interaction with the proposed rate structure was unlawful, but because of FERC's new policy with respect to minimum bills. That new policy may be implemented only prospectively under Sec. 5.
 
 
 30
 Given that CIG itself proposed no change to its minimum bill, and that the minimum bill does not satisfy the narrow exception to Sec. 4 retroactivity described in CIG I and East Tennessee, we therefore conclude that FERC's order eliminating CIG's minimum bill was issued pursuant to the agency's authority under Sec. 5 of the Act. Because retroactive relief is not available under that section, we reject NGPL's arguments that FERC should have eliminated the minimum bill retroactively to the date CIG's proposed rates went into effect subject to refund. Accordingly, we AFFIRM.
 
 
 
 *
 The Honorable Howard C. Bratton, Senior Judge, United States District Court for the District of New Mexico, sitting by designation
 
 
 [1]
 The Commission noted in a footnote that its decisions concerning cost allocation and rate design (other issues in CIG's ratemaking proceeding) would also be applied prospectively. 41 FERC p 61,179, at 61,469 n. 137
 
 
 [2]
 The procedure outlined in Sec. 4, whereby refunds may be had, is explicit. Pending the completion of a "hearing concerning the lawfulness" of a filed rate schedule, the Commission "may suspend the operation of such schedule ... but not for a period longer than five months beyond the time when it would otherwise go into effect." At the end of that period and "on motion of the natural gas company making the filing, the proposed change of rate ... shall go into effect" even if FERC has not yet concluded the hearing. "Where increased rates or charges are thus made effective, the Commission may, ... upon completion of the hearing and decision, ... order such natural gas company to refund, with interest, the portion of such increased rates or charges by its decision found not justified." 15 U.S.C. Sec. 717c(e) (emphasis added). Section 4(e) begins by authorizing the Commission to "make such orders with reference [to the new schedule] as would be proper in a proceeding initiated after it had become effective." This provision must be construed as a reference to the Sec. 5 hearing procedures. Indeed, the Supreme Court has held:
 All that Sec. 4(e) does ... is to add to this basic power [in Sec. 5(a) ] ... the further powers (1) to preserve the status quo pending review of the new rate by suspending its operation for a limited period, and (2) thereafter to make its order retroactive, by means of the refund procedure, to the date the change became effective.
 United Gas Pipe Line Co. v. Mobile Gas Service Corp., 350 U.S. at 341, 76 S.Ct. at 379.
 It cannot be doubted that Congress, in conferring the additional refund power in Sec. 4, intended that it be wielded only in the circumstances detailed there.
 
 
 [3]
 NGPL now advances a creative argument that CIG's rate filing did include a modification of its minimum bill. However, we are not sufficiently persuaded by this argument to reject the conclusions of both CIG, the proponent of the rate change, and FERC, the agency charged with administering the Natural Gas Act, that FERC and NGPL, not CIG, called for changes to the minimum bill
 
 
 [4]
 Even NGPL, which here advocates retroactive elimination of the minimum bill, apparently agrees that CIG would have recovered no more from NGPL via the minimum bill under its proposed rate increase than it had under its prior rates. According to NGPL, the minimum bill recovered about $24 million annually under the old structure, while the new rate structure also would recover $24 million, but $15 million would be collected under the "minimum bill, as modified," and $9 million would be recovered via a new demand charge