**ATLANTIC RICHFIELD COMPANY,**
Petitioner,

v.

**FEDERAL POWER COMMISSION,**
Respondent.

Nos. 76–1882, 76–1929.

United States Court of Appeals,
Ninth Circuit.

Nov. 3, 1978.

---

Edward J. Kremer, Jr., Dallas, Tex., for petitioner.

Steven A. Taube, Atty., Washington, D. C., for respondent.

Before HUFSTEDLER and TANG, Circuit Judges, and GRAY,* District Judge.

PER CURIAM:

Atlantic Richfield Company ("ARCO") petitioned to review two orders of the Federal Power Commission ("FPC") on the grounds that the FPC improperly set "new gas" ceiling prices on ARCO's sales of natural gas to El Paso Natural Gas Company ("El Paso"). The FPC granted temporary certificates of public convenience and necessity enabling ARCO to make the sales to El Paso. Our jurisdiction rests on 15 U.S.C. § 717r(b).

The FPC ruled that the natural gas which ARCO contracted to sell in interstate commerce after January 1, 1973, was subject to the "old gas" price ceilings under FPC regulations, rather than the "new gas" ceilings established by the FPC's rate orders. The FPC ruling was based upon its determination that at the time of the sale, the gas had already been "dedicated" to interstate commerce and was therefore appropriately subject to the lower ceiling rates prior to January 1, 1973.

Both of these orders involve "farmout" agreements, under which an oil producer farms out a portion of the producer's leasehold interest to a different producer to explore for and to produce gas or oil. If the farmout recipient discovers gas in commercial quantities, he receives an assignment of the mineral rights lease and becomes a working interest owner. The original lessee retains an overriding royalty interest in the production.

In No. 76–1882, the agreement provided that after "payout," that is, after the farmout recipient recouped his costs through the

---

* Honorable William P. Gray, United States District Judge, Central District of California, sitting by designation.

sale of the production, the overriding royalty interest expired, the farmout recipient's assignment terminated, and the relinquished interest in the leasehold automatically reverted to the original lessee, who then had a working interest. In No. 76–1929, the original lessee had an option on payout of a one-quarter overriding royalty interest (instead of the prior one-eighth), or a 50 percent working interest; there was no automatic reversion. Both agreements follow the same pattern. The original lessee assigned his working interest to the farmout recipient, retaining a royalty interest; on payout, the royalty interest could be converted to a working interest and the assignment terminated.

The FPC's Order No. 699[1] established a nationwide rate structure for producer sales of natural gas in interstate commerce. The order provided for a higher "new gas" rate for three classes of sales: (1) sales from wells commenced on or after January 1, 1973; (2) sales made pursuant to a contract executed on or after January 1, 1973, "for the sale of natural gas in interstate commerce for gas not previously sold in interstate commerce;" (3) sales made under a renewal contract if the prior contract had expired under its own terms and if either the renewal contract was executed or the original contract expired on or after January 1, 1973. All other gas remained subject to the lower "old gas" ceiling.

ARCO's applications for certificates for the wells in Nos. 76–1882 and 76–1929 requested authorization to sell at the higher "new gas" price. It contended that its gas had not previously been sold in interstate commerce. The theory was that the farmout recipients owned an interest only in that gas that would be produced during the payout period. All the rest of the gas was "ARCO's gas." The farmout recipients did not have an ownership interest in ARCO's gas, and could not contract to sell it. Neither could they "dedicate" it to interstate commerce since it was not their gas. Drawing a distinction between the farmout recipients' gas and ARCO's gas, ARCO argued

that its gas had never been sold in interstate commerce (for by definition the farmout recipients could sell only the gas produced up until payout).

This case is controlled by *State of California v. Southland Royalty Co.*, 436 U.S. 519, 98 S.Ct. 1955, 56 L.Ed.2d 505 (1978). The Supreme Court held that the service obligation created when a lessee for a term of years sold gas in interstate commerce and accepted a certificate of unlimited duration from the FPC attached to the gas itself and bound all those with dominion and power of sale over the gas, including the lessors to whom it reverted. The service obligation imposed by the FPC survived the expiration of the private agreement that gave rise to the FPC's jurisdiction. In rejecting the respondent's contention that the gas at issue was never impressed with an obligation to serve the interstate market because it had never been dedicated to an interstate sale, the Supreme Court explained: "The core of their argument is that 'no man can dedicate what he does not own.' . . . This maxim has an appealing resonance, but only because it takes unfair advantage of an ambiguity in the term 'dedicate.' . . . [G]as which is 'dedicated' pursuant to the Natural Gas Act is not surrendered to the public; it is simply placed within the jurisdiction of the Commission, so that it may be sold to the public at the 'just and reasonable' rates specified by § 4 of the Act. . . . Thus, by 'dedicating' gas to the interstate market, a producer does not effect a gift or even a sale of that gas, but only changes its regulatory status." (436 U.S. at 527, 528, 98 S.Ct. at 1960.)

■ The Supreme Court's holding in *Southland Royalty Co.* that a dedication of gas to interstate commerce by a lessee for a term of years binds the owner applies with even greater force to a case like this one in which petitioner is not the fee owner but a lessee.

■ ARCO argues that it is nevertheless entitled to the higher rate under the "re-

---

1. 39 Fed.Reg. 43213 (1974), 40 Fed.Reg. 2579, 2580 (1975), superseded after this appeal was taken by Opinion No. 770–A, 18 C.F.R. 2.56a

(1977) and Opinion No. 749, 18 C.F.R. 2.56b (1977).

**946**

newal contract" provision of Order No. 699. The argument is untenable with respect to No. 76–1929 because the 1975 contract between El Paso and ARCO was not in any sense a "renewal" of a previous agreement. Prior to payout, El Paso, as the farmout operator, had produced gas for its own use, taking the gas directly into its interstate pipeline system. There was no expired contract to renew. Furthermore, the FPC has ruled that on-system production does not qualify for the renewal classification.

 With respect to No. 76–1882, we do not reach the issue of renewal because ARCO did not preserve the point below. Under 15 U.S.C. § 717r(a), ARCO could not preserve the point without raising it upon its application for rehearing. We are not obliged to consider for judicial review an objection to an order of the FPC unless the objection was urged to the Commission itself, unless there is a reasonable excuse for failure to raise the question. (15 U.S.C. § 717r(b).) No reasonable excuse has been offered. Accordingly, we decline to consider the issue. (*See Phillips Petroleum Co. v. Federal Power Commission* (10th Cir. 1977) 556 F.2d 466, 471.)

AFFIRMED.