**DISTRIGAS CORPORATION, Distrigas of Massachusetts Corporation, Petitioners,**

v.

**FEDERAL ENERGY REGULATORY COMMISSION, Respondent,**

**Boston Gas Company et al., Intervenors.**

**No. 79–1176.**

United States Court of Appeals, First Circuit.

Argued Oct. 4, 1979.

Decided Oct. 31, 1979.

Sherman S. Poland, Washington, D. C., with whom J. Alan MacKay, Boston, Mass., and Ross, Marsh & Foster, Washington, D. C., were on brief, for petitioners.

Rhodell G. Fields, Atty., Washington, D. C., with whom Robert R. Nordhaus, Gen. Counsel, and J. Paul Douglas, Atty., Washington, D. C., were on brief, for respondent.

Frank L. McNamara, Jr., Boston, Mass., with whom L. William Law, Jr., Boston, Mass., was on brief, for Boston Gas Co., intervenors.

Before ALDRICH and CAMPBELL, Circuit Judges, BONSAL,* District Judge.

PER CURIAM.

Under section 3 of the Natural Gas Act, 15 U.S.C. § 717 *et seq.*, a gas importer must obtain the authorization of the Federal Energy Regulatory Commission for the importation, and the terms and conditions thereof. 15 U.S.C. § 717b. Petitioner, Distrigas Corporation, having entered into two contracts in 1969 and 1970 for the purchase of Algerian gas, sought approval, and a hearing, with many intervenors, took place before a Commission examiner. Under one contract there was to be a flat price of 68¢/MMBTU, with a .6¢ annual increase; under the other there was to be 68¢ with varying higher prices (plus the increase) during the winter months. The examiner wrote an extensive opinion. In it he stated,

> "The Alocean contracts with Distrigas provide for the sale of Algerian LNG at an average price of about 70.6¢/MMBTU,[1]
>
>  .   .   .
>
> "[1] Eleven shipments at 68¢, one at 70¢, and two at 85¢."

Again, he observed that there was a base price of 66¢, a 2¢ overage, "and a 2.6¢/MMBTU average additional charge caused by the fluctuating price for six of the fourteen annual shipments under the 1969 contract.  .   .   .  Staff would 'prefer' that the additional 2.6¢/MMBTU cost be eliminated,  .   .   ."

Still later he stated,

> "The 2.6¢/MMBTU charge attributable to the difference in price of those shipments under the 1969 contract would not be allowed."

The "would" referred to substituting actual additional costs, if they should occur, rather than the flat 2.6¢ winter rates. Having made this suggestion, the examiner rejected it, and ended up allowing nothing. He concluded, "[A] firm price is preferable .   .  . An order authorizing Distrigas to import Algerian LNG at 68¢/MMBTU will be entered."

* Of the Southern District of New York, sitting by designation.

The proposed order authorized, "maximum annual quantities of approximately 15.4 million MMBTU at an initial price of 68¢/MMBTU, subject to an annual escalation of 0.6¢/MMBTU." No mention was made of winter rates, or of approving the contracts in their entirety.

This opinion and order came before the Commission, and in Opinion 613, March 9, 1972, after discussing some other matters, the Commission did not repeat the order, but ordered,

"(B) The Initial Decision of Presiding Examiner Litt as modified herein and not inconsistent with this opinion is adopted as the Commission's decision."

Distrigas did not petition for rehearing and review, but went ahead, constructed extensive shore facilities, and imported gas at 68¢, plus the annual increases, but no winter gas until 1976. At that time it learned, assertedly to its surprise, that the Commission Staff felt that winter increments were unauthorized. It thereupon brought a petition with two aspects: to have a declaration that Opinion 613 had authorized the whole proposed price schedule, but if it had not, that it be reconsidered because wrongly decided. In due course the petition was denied in both respects, rehearing was denied, and this petition for review followed.

█ The Commission says, and we agree, that even if it might, if it chose, have noted error and changed Opinion 613, its refusal to do so is not reviewable at this date, because to permit this would frustrate the statutory requirement that Distrigas petition for rehearing, and seek review, back in 1972. *Boston Gas Co. v. FERC,* 1 Cir., 1978, 575 F.2d 975; *Michigan Consol. Gas Co. v. FPC,* D.C.Cir., 1948, 83 U.S.App.D.C. 395, 167 F.2d 264. The only jurisdiction we can recognize is to review the Commission's present decision that Opinion 613 was a denial of the higher winter rates. It is true that the 1976 petition might be read as a somewhat half-hearted attempt to reopen the 1972 proceedings. The petition stated that originally there had been partial stock affiliations between some of the parties, and that "[t]o the extent that such affiliations may have been the basis for exclusion of the seasonal charge, that reason is no longer applicable." We see nothing in the record to warrant the thought that these affiliations had ever been considered relevant. In any event, in its rejection of the petition the Commission did not advert to it. Distrigas would now complain of the silence. However, it did not do so in its petition for rehearing. It is difficult to think it believes it can do so now.

The 1976 petition was first presented to the same examiner, now an administrative law judge, who had drafted the original order.[1] He concluded that his initial decision, as affirmed by the Commission, rejected the excess charges for winter rates. *See* Commission's Order of January 2, 1979, affirming.

█ Before us, apart from attacking the examiner's 1971 decision as inconsistent and unsound, Distrigas argues that "[i]f the Commission had intended in Opinion No. 613 to impose a condition limiting the price Distrigas was authorized to pay its foreign supplier, such a condition had to be expressly stated." This, however, puts the cart before the horse. There was no conditional limitation. The examiner's initial opinion stated flatly that 2.6¢, which had been identified as being the total winter increment over the basic 68¢ rate, was not allowed.[2] We might agree, although we do not reach the point, that the examiner's reasoning for disallowance was inconsistent with some

---

1. Although Distrigas makes no point of it, we think this unfortunate general procedure. It would be only natural for an examiner who had written an opinion and order to be influenced, subjectively, by what he had intended, rather than making a purely objective inquiry into what his language actually provided. However, it was the Commission that had the final say, and we do not rule that there was legal impropriety in the procedure.

2. Nor do we follow Distrigas' seeming argument that somehow the Commission's affirmance sought to impose a condition, but did not do so clearly enough because stated in "boilerplate." We see no issue of conditions.

other parts of his opinion and basically unsound, but this does not change his action, or the language. In light of what we have already quoted the Commission was well warranted in concluding that not only were the winter rates not allowed by him, they were disallowed. Indeed, although elsewhere it suggests some reluctance, Distrigas' brief at one point concedes this.[3]

Distrigas' claim that although the examiner was affirmed, he was not affirmed to the extent that his decision was "inconsistent with this opinion," and that 68¢ was inconsistent with the Commission's "holding that the Descartes Program was in the public interest," is unsupportable. All the Commission said was, "It is in the public interest that Distrigas be authorized to import LNG." This had no reference to price, but was in response to a broad objection by one of the intervenors that importing Algerian gas "raises a public interest issue from the national security viewpoint." If in fact the examiner's price decision destroyed the whole undertaking, the time for Distrigas to speak was then.[4]

*The petition for review is denied.*

---

**3.** "[T]he Examiner recommended that the Commission authorize Distrigas to import natural gas from Algeria . . . 'at an initial price of 68¢/MMBTU' . . . . The recommendation that the payments by Distrigas for the imported LNG be limited to 68¢ per MMBTU would have had the effect of prohibiting Distrigas from paying the contractual winter rates. . . ." Distrigas' conclusion that limiting it to 68¢ presaged a lot of trouble (if Alocean would not waive its winter rates, which it subsequently refused to do) does not mean the examiner did not do it.

---

**4.** Because Distrigas makes so much of it, we remark that we are peculiarly unimpressed by the contention that because, in issuing temporary permission for Distrigas to pay and to charge its customers at the winter rates subject to refund pending final action on the petition, the Commission stated that the "petition raises serious questions concerning the interpretation of Opinion 613," this in some way bound the Commission in its favor. The very purpose of temporary orders pending final decision is to avoid reaching a hasty conclusion, not to prejudge.