## SOUTH GEORGIA NATURAL GAS COMPANY, Petitioner,

### v.

## FEDERAL ENERGY REGULATORY COMMISSION, Respondent.

### No. 81–7784.

United States Court of Appeals,
Eleventh Circuit.

March 7, 1983.

Roy R. Robertson, Jr., Birmingham, Ala., for Southern Natural Gas Co.

Jerome M. Feit, Sol., Arlene Pianko Groner, Charles E. Bullock, Washington, D.C., for F.E.R.C.

Before RONEY, TJOFLAT and HATCHETT, Circuit Judges.

RONEY, Circuit Judge:

This appeal involves an interpretation of a regulation of the Federal Energy Regulatory Commission (FERC) concerning the filing of certain tariff information. The ultimate issue is whether a three-year period for filing the information began on August 1, 1980 or on July 2, 1981. Concluding that FERC's interpretation of its own regulation is not unreasonable, arbitrary, capricious, or an abuse of discretion, we affirm the agency's decision that the period began on August 1, 1980.

Briefly, FERC has provided natural gas pipelines a procedure to recover their cost of purchased gas without having to file a general rate increase application. The procedure requires a pipeline to obtain approval of a Base Tariff Rate which includes all authorized costs including the cost of purchased gas. Through inclusion of a purchase gas agreement (PGA) in its base tariff, a pipeline can thereafter adjust its rates every six months to reflect changes in the cost of purchased gas. 18 C.F.R. § 154.-38(d)(4)(iv) (1982). *See Panhandle Eastern Pipe Line Co. v. FERC,* 613 F.2d 1120, 1143 (D.C.Cir.1979) (Wright, C.J., concurring in part), *cert. denied,* 449 U.S. 889, 101 S.Ct. 247, 66 L.Ed.2d 115 (1980). The regulation goes on to provide that a pipeline using a PGA clause must file a new base tariff rate, for Commission Review, every 36 months along with a cost of service study that includes both purchased gas and non-gas costs. 18 C.F.R. § 154.38(d)(4)(vi)(a) (1982). It is the commencement date for this 36-month period that is the issue here.

Although the period normally runs from when the most recent base tariff is filed, it is postponed if the pipeline subsequently files for a general rate increase under section 4 of the Natural Gas Act, 15 U.S.C.A. § 717c. In such a case, the date on which the 36-month period begins to run is controlled by 18 C.F.R. § 154.38(d)(4)(vi)(b) (1982), which provides that the period starts "when the proposed rates go into effect", as follows:

> If a section 4(e) case is filed before the expiration of the 36-month period, a new 36-month period will start running when the proposed rates go into effect. Rates determined by the Commission in a section 4(e) or a 5(a) proceeding or rates in a settlement agreement approved by the Commission shall establish the new Base Tariff Rate *when they become effective pursuant to a final order,* and a new 36-month period will start running (Emphasis added).

South Georgia maintains that the quoted language is clear: when the Commission suspends the effectiveness of a section 4 filing and then proceeds under the authority of section 5 of the Natural Gas Act to find that the rate being charged is not just and reasonable, it enters an order determining the just and reasonable rate "to be thereafter observed." 15 U.S.C.A. § 717d(a). It argues that the Commission's regulation ties the start of a new 36-month period to the action taken by the Commission under section 5, which action operates prospectively. The rationale of the Commission's orders, on the other hand, is that the phrase "when [the settlement rates] become effective" relates back to the date when the pipeline's filed rates became effective subject to refund.

The parties generally agree on the pertinent facts. On February 1, 1977 South Georgia operating under a tariff with a purchase gas agreement filed a section 4 application for proposed changes in its tariff starting one month later. Acting pursuant to section 4(e), 15 U.S.C.A. § 717c(e), FERC suspended the proposed increase for five months until August 1st. At that time, South Georgia could lawfully collect the tariff, subject to refund if a subsequent proceeding or settlement should determine the proposed tariff to be excessive. On May 5, 1978 the Commission approved a settlement that provided for rates lower than those proposed which, when filed in a substitute tariff, went into effect July 2, 1978, with refunds from August 1, 1977.

Following informal correspondence between the parties, South Georgia in December 1980 asked FERC to clarify when it had to file a new base tariff pursuant to the

purchase gas regulation. In one of the orders that are the subject of this appeal, the Commission responded that South Georgia should have filed on August 1, 1980, 36 months after August 1, 1977, and directed the pipeline to do so immediately with the restated rates to be effective from August first. The Commission subsequently denied a rehearing in the second order from which South Georgia appeals.

■ In considering FERC's construction of the controlling regulation it is important to remember our narrow standard of review. "An agency's interpretation of its own regulation is entitled to great deference." *Pennzoil Co. v. FERC*, 645 F.2d 360, 383 (5th Cir.1981), *cert. denied*, 454 U.S. 1142, 102 S.Ct. 1000, 71 L.Ed.2d 293 (1982). *See Udall v. Tallman*, 380 U.S. 1, 16, 85 S.Ct. 792, 801, 13 L.Ed.2d 616 (1965) (noting that this deference is even greater than that afforded an agency's construction of a statute it administers). The agency's view must be upheld unless it is so plainly erroneous or so inconsistent with either the regulation or the statute authorizing the regulation that its decision is arbitrary, capricious, an abuse of discretion or otherwise not in accordance with law. *See* 5 U.S.C.A. § 706; *United States v. Larionoff*, 431 U.S. 864, 872–73, 97 S.Ct. 2150, 2155–2156, 53 L.Ed.2d 48 (1977); *Bowles v. Seminole Rock & Sand Co.*, 325 U.S. 410, 414, 65 S.Ct. 1215, 1217, 89 L.Ed. 1700 (1945). As long as the agency's interpretation is reasonable, a reviewing court cannot overrule it even though other interpretations might strike the court as more reasonable. *Homan & Crimen, Inc. v. Harris*, 626 F.2d 1201, 1208–09 (5th Cir.1980), *motion to direct clerk to accept and docket cert. petition denied*, 450 U.S. 975, 101 S.Ct. 1506, 67 L.Ed.2d 809 (1981); *Expedient Services, Inc. v. Weaver*, 614 F.2d 56, 57 n.1 (5th Cir.1980); *Kinnett Dairies, Inc. v. Farrow*, 580 F.2d 1260, 1270 (5th Cir.1978); *Gillring Oil Co. v. FERC*, 566 F.2d 1323, 1325 (5th Cir.), *cert. denied*, 439 U.S. 823, 99 S.Ct. 91, 58 L.Ed.2d 115 (1978); *Allen M. Campbell Co. General Contractors, Inc. v. Lloyd Wood Construction Co.*, 446 F.2d 261, 265 (5th Cir.1971).

■ The regulation is hardly a model of clarity. While it provides that a settlement triggers a new 36-month period, the date on which the period begins is less apparent. One can easily read the provision, as South Georgia suggests, to mean that the critical date is when the order approving the settlement states that the settlement rates become effective. The letter accepting the settlement stated that the Commission accepted the substitute tariff "effective July 2, 1978." Under section 4(e) of the Natural Gas Act, however, though not noted in the letter, the rates were subject to refund from August 1, 1977. Focusing on the Commission's power to order refunds of amounts exceeding the base rate established in the settlement which were collected between the end of the five-month suspension and the time of settlement, 15 U.S.C.A. § 717c(e), FERC argues that the Commission implements the adjusted base rate as of the date the suspension ended. Thus, the 36-month period, which commences when the new base rate goes into effect, dates back to the conclusion of the suspension.

FERC's analysis of the regulation is reasonable. South Georgia was entitled to keep, up to the amount of the settlement rates, the tariff collected from August 1, 1977, when it commenced collecting its proposed rates. It had to refund only amounts collected in excess of the settlement rates. Thus, the settlement rates for all practical purposes were the rates actually permitted to be collected from the refund date. Therefore, it seems to us that the regulation could reasonably be interpreted to treat the refund date of August 1, 1977 as the date when the settlement rates went "into effect" and when the new base tariff became "effective pursuant to the final order."

The provision focuses on the date the new base tariff affects the rates that can be charged, and the Commission's discretionary authority to require refunds of all amounts collected in excess of the just and reasonable rates determined in a settlement or hearing is well established. *See, e.g.,*

*FPC v. Tennessee Gas Transmission Co.,* 371 U.S. 145, 152, 83 S.Ct. 211, 215, 9 L.Ed.2d 199 (1962); *United Gas Pipe Line Co. v. Mobile Gas Service Corp.,* 350 U.S. 332, 341, 76 S.Ct. 373, 379, 100 L.Ed. 373 (1956). Thus, the reference in 18 C.F.R. § 154.-38(d)(4)(vi)(b) (1982) to the date the settlement rates go into effect could be to the date the pipeline began collecting the proposed rates subject to refund.

FERC's interpretation of the regulation seems particularly plausible when one considers the provision's purpose. The Commission has a statutory duty to ensure that pipeline rates are "just and reasonable." 15 U.S.C.A. §§ 717c–717d. Although it has permitted pipelines through PGAs to pass on to consumers increases in the cost of purchased gas without regulatory review, it requires the pipelines to restate their base tariff and submit a full cost study every 36 months. 18 C.F.R. § 154.38(d)(4)(vi)(a) (1982). Through this periodic review, the Commission seeks to protect consumers from excessive rates. *Panhandle Eastern Pipe Line Co. v. FERC,* 613 F.2d at 1143. Pipelines could elongate the 36-month review cycle deemed appropriate by FERC if all settlements triggered a new 36-month period beginning when the Commission approved the settlement. Unless the settlement reflected a new full cost study, the study previously submitted by the pipeline when it filed the proposed increase would remain the most recent statement of the pipeline's costs until three years after the settlement. By foreclosing this possibility, FERC's interpretation of 18 C.F.R. § 154.-38(d)(4)(vi)(b) (1982) serves the regulatory goal: ensuring a full cost review every 36 months. *Cf. Pennzoil Oil Co. v. FERC,* 645 F.2d at 383 ("Administrative regulations are to be interpreted broadly and liberally to effectuate their essential purposes."). Indeed where the settlement itself has accomplished this goal by entailing a new full cost study, the Commission has permitted the pipeline to wait until 36 months after the settlement to file a new base tariff. *See Algonquin Gas Transmission Co.,* No. RP78–74, slip op. at 2–3 (FERC order October 13, 1978).

In sum, FERC's interpretation of 18 C.F.R. § 154.38(d)(4)(vi)(b) (1982) as applied in this case appears reasonable.

AFFIRMED.