**FLORIDA GAS TRANSMISSION COMPANY, Petitioner,**

v.

**FEDERAL ENERGY REGULATORY COMMISSION, Respondent.**

No. 82–6041.

United States Court of Appeals, Eleventh Circuit.

Sept. 17, 1984.

---

* Honorable Daniel H. Thomas, U.S. District Judge for the Southern District of Alabama, sitting by designation.

Vinson & Elkins, Henry S. May, Jr., Houston, Tex., Mark E. Haedicke, William V. Allison, Winter Park, Fla., for Florida Gas Transmission.

Arlene Pianko Groner, John H. Conway, Jerome Feit, Barbara J. Weller, Federal Energy Regulatory Commission, Washington, D.C., for respondent F.E.R.C.

J. David Mann, Jr., Morgan, Lewis & Bockius, Washington, D.C., for Florida Power Co.

Peyton G. Bowman, III, Reid & Preist, Daniel J. Wright, Washington, D.C., for Florida Power & Light Co.

Petition for Review of an Order of the Federal Energy Regulatory Commission.

Before RONEY, HENDERSON and HATCHETT, Circuit Judges.

RONEY, Circuit Judge:

This appeal involves a purely legal issue in a highly technical field of the law that defies simplification. Upon settlement of a natural gas rate proceeding, the parties reserved for determination by the Federal Energy Regulatory Commission (FERC) the legal question of whether the Florida Gas Transmission Company owed a refund to its transportation customers for the revenue collected in excess of the cost of providing service during a so-called "locked in" period, pending consideration of a required 36-month rate adjustment under the Purchased Gas Adjustment (PGA) regulations. The FERC decided the point adversely to Florida Gas and ordered a refund of $1,058,208 stipulated to be the correct amount.

Florida Gas argues that this order misapplied the agency's own regulations, and violated the controlling statute. Holding that FERC's interpretation of its own regulation is not unreasonable, arbitrary, capricious, or an abuse of discretion and not a violation of its statutory authority, we affirm the agency's decision that all rates are subject to the operation of the PGA regulations 36-month review, and subject to refund under 18 C.F.R. § 154.38(d)(4)(vi)(a).

Florida Gas is an interstate pipeline subject to the jurisdiction of FERC under the Natural Gas Act, 15 U.S.C.A. § 717–717w (1976). The company provides jurisdictional services for two kinds of customers: to some customers it sells gas it has purchased; to other customers it provides transportation of gas. The rates charged each of these customers are filed with the FERC.

As to the gas sold to customers, a natural gas company may elect to receive the advantages of a Purchased Gas Adjustment (PGA) clause, which permits periodic rate changes based on the cost of gas that it purchases for sale. Although this clause permits an adjustment every six months based solely on the cost of gas, it requires the natural gas company to file, at least once every 36 months, a tariff sheet restating its rates to establish a new base tariff rate upon the expiration of the period. 18 C.F.R. § 154.38(d)(4)(vi)(a). This requirement is based on the idea that since a PGA clause gives pipelines an automatic right to increase their rates to reflect increases in the cost of purchased gas, downward adjustments should be made to reflect decreases in other costs that have occurred during the preceding 36 months.

The present proceeding reflected decreased costs for the transportation component of the rate that could be charged for the sale of gas. The transportation customers were being charged at a rate that was in excess of this decreased cost. There was no question but that the gas purchase customers were entitled to a refund of the excess collected above the actual cost. The question here is whether the transportation customers were also entitled to the benefit of that decreased cost determination and therefore entitled to a refund collected in excess of cost.

Stated precisely this controversy turns on whether that new base tariff rate applies to the transportation customers as well as the purchased gas customers. Florida Gas claims that the base tariff rate applies only to increased rates and not to unchanged rates. The Commission interpreted its regulation to mean that the base tariff rate is a composite of all filed rates, changed or unchanged, and therefore applies to the transportation rates.

This Court has adopted the basic rule of administrative law that "[a]n agency's interpretation of its own regulation is entitled to great deference." *South Georgia Natural Gas Co. v. FERC,* 699 F.2d 1088, 1090 (11th Cir.1983); *Pennzoil Co. v. FERC,* 645 F.2d 360, 383 (5th Cir.1981), *cert. denied,* 454 U.S. 1142, 102 S.Ct. 1000, 71 L.Ed.2d 293 (1982); *see Udall v. Tallman,* 380 U.S. 1, 16–17, 85 S.Ct. 792, 801–802, 13 L.Ed.2d 616 (1965). Accordingly, "[t]he agency's view must be upheld unless it is so plainly erroneous or so inconsistent with either the regulation or the statute authorizing the regulation that its decision is arbitrary, capricious, an abuse of discretion or otherwise not in accordance with

law." 699 F.2d at 1090. *See* 5 U.S.C.A. § 706; *United States v. Larionoff,* 431 U.S. 864, 872–73, 97 S.Ct. 2150, 2155–2156, 53 L.Ed.2d 48 (1977); *Bowles v. Seminole Rock & Sand Co.,* 325 U.S. 410, 414, 65 S.Ct. 1215, 1217, 89 L.Ed. 1700 (1945). "As long as the agency's interpretation is reasonable, a reviewing court cannot overrule it even though other interpretations might strike the court as more reasonable." 699 F.2d at 1090. *Homan & Crimen, Inc. v. Harris,* 626 F.2d 1201, 1208–09 (5th Cir. 1980); *Expedient Services, Inc. v. Weaver,* 614 F.2d 56, 57 n. 1 (5th Cir.1980); *Kinnett Dairies, Inc. v. Farrow,* 580 F.2d 1260, 1270 (5th Cir.1978); *Gillring Oil Co. v. FERC,* 566 F.2d 1323, 1325 (5th Cir.), *cert. denied,* 439 U.S. 823, 99 S.Ct. 91, 58 L.Ed.2d 115 (1978); *Allen M. Campbell Co. General Contractors, Inc. v. Lloyd Wood Construction Co.,* 446 F.2d 261, 265 (5th Cir.1971).

█ The Commission interprets the words "Base Tariff Rate" in the following regulation to be a composite rate that included transportation rates:

> Upon the expiration of 36 months after the effective date of the PGA clause, the company shall file a tariff sheet(s) restating its rates to establish a new Base Tariff Rate. The Company shall state its agreement that this filing will automatically be subject to refund concurrently with the filing at the end of 36 months of the tariff sheets establishing a new Base Tariff Rate until an agreement is reached or a Commission determination is made.

Section 154.38(d)(4)(vi)(a). The regulation could have specifically stated that the new Base Tariff Rate applied only to rates subject to the purchased gas adjustment clause. It could have been clearly drafted to require that the restatement of the Base Tariff Rate must include the transportation rates. As a matter of regulation interpretation, given our standard of review, the Commission was free to go either way. Thus, as it did in the order deciding the reserved issue in this case, it was entitled to conclude

that the staff and transportation customers are correct in arguing that the applicable PGA regulations are designed to incorporate a balancing of a pipeline's total jurisdictional costs and revenues at the time a 36 month filing is made. In Order No. 452, 47 FPC 1049 (1972), adopting the PGA regulations, the FPC made clear that ratepayers are protected by the rule since it 'provides for periodic review and investigation into the companies' total cost of service.' 47 FPC at 1051. Subpart 154.38(d)(4)(vi)(a) in particular as well as Order No. 452 clearly provide that tariff rates are to be refiled at least every 36 months to arrive at a 'new Base Tariff Rate'. The Base Tariff Rate is a composite of the pipeline's individual service rates and refunds are owed up to the amount by which the new Base Tariff Rate exceeds the old Base Tariff Rate that was established 36 months before.

Tariff is defined by the regulations as "a compilation, in book form, of all the effective rate schedules of a particular natural gas company." 18 C.F.R. § 154.14. Rate schedule is defined as "a statement of a rate or charge for a particular classification of transportation or sale of natural gas...." 18 C.F.R. § 154.11. Since a rate schedule is defined as a statement of a rate or charge and tariff is defined as a compilation of all effective rate schedules, then base tariff rate could be interpreted to be a composite of all rates.

The Commission's interpretation of base tariff rates as a composite of all rates and charges is consistent with judicial decisions. This Court stated recently, in a case concerning the interpretation of the same regulations at issue here, the use of a Purchase Gas Agreement (PGA) necessitates the pipeline's obtaining the "approval of a Base Tariff Rate which includes all authorized costs including the cost of purchased gas." *South Georgia Natural Gas Co. v. FERC,* 699 F.2d 1088, 1089 (11th Cir.1983). In *United Gas Co. v. Mobile Gas Corp.,* 350 U.S. 332, 76 S.Ct. 373, 100 L.Ed. 373 (1956), the Supreme Court ex-

plained the statutory scheme of the Natural Gas Act. Specifically, the Supreme Court stated that all sections of the gas act "are simply parts of a single statutory scheme under which all rates are established initially by the natural gas companies, by contract or otherwise, and all rates are subject to being modified by the Commission upon a finding that they are unlawful." 350 U.S. at 341, 76 S.Ct. at 379.

We need not restate here the various arguments made to the Commission to convince it that a different interpretation should be made. Those arguments are adequately handled in the Commission's order in this case and we see nothing unreasonable in the answers made to those arguments.

Florida Gas argues, however, that even if the regulation does include the restatement of the transportation rates, it would violate the statutory authority of the Commission for it to require that transportation rates be collected subject to refund. Agency regulations must be harmonious with the authority granted by the Natural Gas Act.

In claiming that the Commission's orders violate the fundamental principles of ratemaking under the Natural Gas Act, the petitioner argues: a natural gas company cannot charge a rate higher or lower than the one on file with the Commission; during the locked-in period the petitioner's rates are the effective rates; the Commission's order accepting filing did not require the t–1, t–2, and t–3 rates to be collected subject to refund; a section 4 filing does not trigger refund unless the Commission elects to accept rates subject to refund; only changed rates are subject to refund under section 4 and 7; and refunds cannot be ordered that are below the last clean rate filed.

■ This Circuit holds that all costs including the cost of purchased gas are included in the section 4 review and approval of the Base Tariff Rate. *South Georgia Natural Gas Co. v. FERC,* 670 F.2d 38, 41 (5th Cir. Unit A 1982) (holding that a filing to increase rates pursuant to section 4

opened to Commission scrutiny the propriety of the PGA clause contained within its rate schedule); *Cities of Batavia v. FERC,* 672 F.2d 64, 77 (D.C.Cir.1982) (holding, under a similar section of the Federal Power Act, that the *Transco* case does not preclude "the Commission from reviewing a revised rate completely to assume that all its parts—old and new—operate in tandem to insure a 'just and reasonable' result and from ordering refunds...."). Florida Gas' argument that only changed rates are subject to refund under the Act is contrary to this Circuit's interpretation of the scope of a section 4 review.

■ The Commission's regulations clearly point out that acceptance of a filing does not constitute approval of the filing. *See* 18 C.F.R. § 154.23 (1982). Furthermore, under a section 4 review, the Act specifies the Commission's power to suspend a new rate and order refund for rates found unlawful during the locked-in period. The Commission's May 11, 1979 order stated that Florida Gas's rates during the locked-in period are effective, subject to refund if found to be unlawful. The Commission's order clearly stated that Florida Gas' proposed tariff sheet having not been shown to be just and reasonable was accepted subject to refund for the locked-in period, April 15, 1979 through June 6, 1979.

Florida Gas' argument that a section 4 review does not trigger refund unless the Commission elects to accept rates subject to refund, fails to recognize that the Commission's order was explicit in accepting Florida Gas' rates subject to refund.

The Commission's silence in its May 11, 1979 order on Florida Gas' transportation rates is not significant. Since this Circuit has defined the Base Tariff Rate as a composite of all costs, the Commission's acceptance subject to refund applied to all rates and all rates were subject to refund.

Florida Gas' argument that its transportation costs are being lowered below "the last clean rate" fails to recognize that the Base Tariff Rate is a composite rate. Refund liability is determined by comparing

the restated Base Tariff Rate with the Base Tariff Rate as finally approved by the Commission. 18 C.F.R. § 154.38(d)(4)(vi) (*C*). The refund liability is measured by the previously approved Base Tariff Rate. Florida Gas' previous Base Tariff Rate was approved by the Commission in its 1976 section 4 review. It is the composite rate that sets the lower limit. A change in the transportation costs cannot be held to be a violation of the "last clean rate" doctrine, a composite rate.

AFFIRMED.