791 F.2d 803
 COLORADO INTERSTATE GAS COMPANY, Petitioner,
v.
FEDERAL ENERGY REGULATORY COMMISSION, Respondent,
Natural Gas Pipeline Company of America; The Peoples Gas
Light and Coke Company, and North Shore Gas Company; Public
Service Company of Colorado, Western Gas Supply Company and
Cheyenne Light, Fuel and Power Company; The City and County
of Denver, Colorado; KN Energy, Inc.; MIGC, Inc.; and the
City of Colorado Springs, Colorado, Intervenors.
 Nos. 84-2286, 85-1171.
 United States Court of Appeals,
Tenth Circuit.
 May 19, 1986.
 
 William M. Lange, Colorado Springs, Colo. (Nancy A. White, also of Colorado Springs, Colo., with him on briefs), for petitioner Colorado Interstate Gas Co.
 John Harris Conway (William H. Satterfield, Gen. Counsel, Barbara J. Weller, Deputy Sol., and Joseph S. Davies, Atty., Washington, D.C., on briefs), for respondent F.E.R.C.
 Paul W. Mallory, Lombard, Ill. (Paul E. Goldstein and Priscilla Mims, also of Lombard, Ill., and Joseph M. Wells, Lombard, Ill., of counsel, with him on briefs), for intervenor Natural Gas Pipeline Co. of America.
 James G. Colvin, II, City Atty., Colorado Springs, Colo., and Gregory L. Johnson and Michael J. Gianunzio, of Horn, Anderson & Johnson, Colorado Springs, Colo., filed briefs for intervenor City of Colorado Springs in Nos. 84-2286 and 85-1171.
 Steven H. Kaplan, City Atty., and George J. Cerrone, Jr., Asst. City Atty., Denver, Colo., filed a brief for intervenor City and County of Denver in No. 84-2286.
 James R. McCotter, of Kelly, Stansfield & O'Donnell, Denver, Colo., filed a brief for intervenors Public Service Co. of Colorado, Western Gas Supply Co., and Cheyenne Light, Fuel and Power Co. in Nos. 84-2286 and 85-1171.
 James Hinchliff, Thomas M. Patrick, and Karen Cargill, Chicago, Ill., filed a joint brief for intervenors The Peoples Gas Light and Coke Co. and North Shore Gas Co. in Nos. 84-2286 and 85-1171.
 Before BARRETT, McKAY and TACHA, Circuit Judges.
 TACHA, Circuit Judge.
 
 
 1
 This case consolidates appeals from two orders of the Federal Energy Regulatory Commission (Commission) issued in the course of a rate increase proceeding under Sec. 4 of the Natural Gas Act. This court has jurisdiction to review these orders pursuant to 15 U.S.C. Sec. 717r. The questions presented are whether the Commission acted within its authority in (1) ordering retroactive modification of a contract provision that the company seeking the rate increase did not propose to change, and (2) rejecting the company's compliance filing. We affirm the orders of the Commission.
 
 
 2
 This case has a long and complicated procedural history which will be outlined briefly. Colorado Interstate Gas Company (CIG) is engaged in the interstate sale of natural gas. Pursuant to a series of service agreements, Natural Gas Pipeline Company of America (Natural) has purchased gas from CIG since 1955. Currently Natural purchases gas from CIG at two different rates, F-1 and H-1. Each rate has two components, a commodity charge and a demand charge. The commodity charge includes all variable costs (mainly the cost of the gas) plus certain fixed costs. The demand charge includes all fixed costs not allocated to the commodity charge. The F-1 rate covers field sales; the H-1 rate covers sales from CIG's mainline facility. The H-1 rate is higher than the F-1 rate because it includes fixed costs of storage and transmission facilities.
 
 
 3
 The service agreement existing between CIG and Natural at the start of this regulatory action, like the previous service agreements between the companies, contains a minimum commodity bill. This minimum bill provision requires Natural to take or pay for 90% of the volume of gas to which it is contractually entitled. According to the minimum bill, all deficiency charges, whether arising under the F-1 or the H-1 rate schedules, are assessed at the lower F-1 rate. Prior to 1983, the pay provision of the minimum bill had never been triggered.
 
 
 4
 In March 1982, CIG initiated a general rate increase proceeding under Sec. 4 of the Natural Gas Act, 15 U.S.C. Sec. 717c. The rate increase neither altered nor mentioned the minimum bill provision in the service agreement between Natural and CIG. Natural and several other gas companies intervened in the Sec. 4 proceeding. Pursuant to 15 U.S.C. Sec. 717c, the Commission suspended the rate increase until September 29, 1982, after which CIG's increased rates became effective subject to refund.[1]
 
 
 5
 CIG filed a proposed stipulation and agreement which the intervenors, with the exception of Natural, accepted. Natural opposed the settlement because it failed to modify the minimum bill, a provision Natural contended was unreasonable and discriminatory. The Administrative Law Judge (ALJ) issued an order severing the minimum bill issue and certifying the remaining portion of CIG's settlement to the Commission.[2] The ALJ specifically noted in his order that rates charged Natural under the minimum bill were subject to refund.
 
 
 6
 The Commission approved the settlement proposal as certified by the ALJ, finding that the settlement reasonably resolved the issues with which it was concerned.[3] The Commission noted that the minimum bill issue remained unresolved.
 
 
 7
 The minimum bill issue then proceeded to a hearing before the ALJ. The ALJ concluded that the minimum bill as constituted was not just and reasonable because the provision required Natural to pay the variable costs of gas that it did not take.[4] He replaced the minimum bill with a demand charge designed to enable CIG to recover all fixed costs allocable to Natural. The ALJ determined that the demand charge should be given prospective effect. The Commission concurred in the ALJ's finding that the minimum bill imposed by CIG was not just and reasonable.[5] The Commission, however, permitted CIG to retain the minimum bill but ordered CIG to modify the provision so as to preclude the collection of variable costs. The Commission made this modification retroactive to the effective date of CIG's rate increase.[6] CIG sought rehearing which the Commission denied.[7]
 
 
 8
 CIG's proposed revision of the minimum bill was rejected by the Commission as not in compliance with the modification order.[8] The Commission denied CIG's request for a rehearing.[9] This appeal followed.
 
 
 9
 During the course of the Sec. 4 proceeding, CIG was also involved in a Sec. 7 proceeding. In the Sec. 7 proceeding, CIG sought and was issued a certificate of public convenience and necessity authorizing CIG to increase its sales to Natural.[10] Upon issuance of the certificate, CIG and Natural entered into a new service agreement which was accepted by the Commission.[11]
 
 
 10
 The questions on appeal are whether the Commission acted within its authority in (1) ordering modification of the minimum commodity bill in the service agreement between CIG and Natural retroactive to the effective date of CIG's 1982 rate increase, and (2) rejecting CIG's revised minimum commodity bill compliance filing.
 
 I.
 
 11
 The first question we address is whether the Commission acted within its authority in giving retroactive effect to the minimum bill revision.
 
 A.
 
 12
 CIG concedes that the minimum bill was unjust and unreasonable and thus subject to prospective modification under Sec. 5 of the Natural Gas Act. The question raised in this case is whether the Commission had the authority to order retroactive modification under Sec. 4. The primary purpose of the Natural Gas Act, 15 U.S.C. Sec. 717 et seq., is to protect consumers from exploitation at the hands of natural gas companies. Federal Power Comm'n v. Hope Natural Gas Co., 320 U.S. 591, 610, 64 S.Ct. 281, 291, 88 L.Ed. 333 (1944). This purpose is achieved through the Commission's plenary review of the contracts and rate schedules established by such companies. Permian Basin Area Rate Cases, 390 U.S. 747, 784, 88 S.Ct. 1344, 1368, 20 L.Ed.2d 312 (1968); United Gas Pipe Line Co. v. Mobile Gas Service Corp., 350 U.S. 332, 341, 76 S.Ct. 373, 379, 100 L.Ed. 373 (1956). The Commission conducts this plenary review pursuant to proceedings initiated under Secs. 4 and 5 of the Natural Gas Act. In proceedings under either section, the Commission determines whether the rates fixed by natural gas companies are just and reasonable. United Gas Pipe Line Co. v. Mobile Gas Service Corp., 350 U.S. at 341, 76 S.Ct. at 379.
 
 
 13
 Though the ultimate issue is the same under either section, the Commission's power in reviewing a company's rates and the means of initiating Commission review differ under the two sections. A Sec. 5 rate proceeding, in which the Commission reviews previously established rates of a natural gas company, is initiated upon the Commission's own motion or upon the complaint of third parties. The moving or complaining party has the burden of proving the established rates are unjust and unreasonable. If the moving party successfully meets that burden, the Commission sets the rates the natural gas company may charge thereafter. Only prospective relief from unjust rates is available in a Sec. 5 proceeding. 15 U.S.C. Sec. 717d(a); Atlantic Ref. Co. v. Public Serv. Comm'n, 360 U.S. 378, 389, 79 S.Ct. 1246, 1253, 3 L.Ed.2d 1312 (1959).
 
 
 14
 The filing of new rates by a natural gas company triggers Commission review under Sec. 4. In a Sec. 4 proceeding, the gas company has the burden of justifying its newly filed rates. If the gas company fails to show that its increased rates are just and reasonable, the Commission modifies the rates. This modification may be made retroactive through the Commission's refund power to the date the increased rates became effective. 15 U.S.C. Sec. 717c(e); United Gas Pipe Line Co. v. Mobile Gas Service Corp., 350 U.S. at 341, 76 S.Ct. at 379.
 
 
 15
 Section 4 of the Natural Gas Act gives the Commission broad authority to scrutinize new rates filed by a gas company to insure that such rates are just and reasonable. The Commission may review a gas company's rate structure to insure that all parts of the structure--both old and new--operate together to produce just and reasonable rates. See City of Batavia v. Federal Energy Regulatory Comm'n, 672 F.2d 64, 75-77 (D.C.Cir.1982) (dealing with a similar section of the Federal Power Act, 16 U.S.C. Sec. 824d[e]. By filing the rate increase, a gas company assumes the risk of having to justify its entire rate structure, see Federal Power Comm'n v. Tennessee Gas Transmission Co., 371 U.S. 145, 152, 83 S.Ct. 211, 215, 9 L.Ed.2d 199 (1962), including integral provisions of that structure which the company does not propose to change, Florida Gas Transmission Co. v. Federal Energy Regulatory Comm'n, 741 F.2d 1307, 1311 (11th Cir.1984); North Penn Gas Co. v. Federal Energy Regulatory Comm'n, 707 F.2d 763, 769 (3d Cir.1983); City of Batavia v. Federal Energy Regulatory Comm'n, 672 F.2d at 75-77; Laclede Gas Co. v. Federal Energy Regulatory Comm'n, 670 F.2d 38, 41-42 (5th Cir.1982). A provision which serves as a charging mechanism is considered an integral part of a rate increase and a gas company's rate structure. Cf. Laclede Gas Co. v. Federal Energy Regulatory Comm'n, 670 F.2d at 41-42 (finding a purchased gas adjustment clause is necessarily a part of a new rate filing, and thus subject to Sec. 4 scrutiny, because it is "an integral part of the manner in which rates are charged").
 
 
 16
 CIG filed a rate increase under Sec. 4, but the rate filing proposed no change in the minimum bill. The propriety of subjecting the minimum bill to review under Sec. 4 requires a finding that the provision is integral to the rate structure of CIG. Both the ALJ and the Commission found that the bill is an essential part of the rate structure. We must uphold this factual finding if it is supported by substantial evidence. 15 U.S.C. Sec. 717r(b); Permian Basin Area Rate Cases, 390 U.S. at 767, 88 S.Ct. at 1360.
 
 
 17
 The ALJ set forth the basis of this factual finding as follows:
 
 
 18
 Inasmuch as the rates applicable to Natural under the F-1 and the H-1 Rate Schedules are volumetric rates, all fixed and variable costs previously allocated to Natural pursuant to the partially approved settlements are included in these one-part volumetric rates. CIG's Section 4 rate filing increased rate components included in the F-1 and H-1 Rate Schedules, and, accordingly, the charges flowing from implementation of the minimum bill provisions were also affected. To invoke the minimum bill provisions, CIG must turn to its F-1 and H-1 Rate Schedules as well as its service agreement to determine its charges to Natural.
 
 
 19
 Hence, the proposed rate increase inflates the impact of the minimum bill provisions which are components of the entire rate design. Unlike other aspects of the longstanding service agreement which have no different impact upon a purchaser after a rate increase, the charges which can be collected under minimum bill provisions flex in tandem with a rate increase. Clearly, the minimum bill provisions are an integral part of the rate increase....
 
 
 20
 25 F.E.R.C. p 63,012 at 65,015.
 
 
 21
 As the ALJ found, CIG's rate increase elevated the impact of the minimum bill. Natural is CIG's second largest customer and purchases about 25% of the gas CIG sells. Thus, the minimum bill, which requires Natural to pay for 90% of its annual entitlement even if it takes no gas, guarantees a large and constant source of payment for CIG. This guaranteed payment has a major impact on CIG and its rate structure. The Commission's determination that the minimum bill is an integral aspect of the CIG rate structure and therefore is subject to Sec. 4 review is supported by substantial evidence.
 
 
 22
 The Commission's suspension order in this proceeding specifically provided for retroactive refund. This order preserved the Commission's power to revise each integral provision of the rate structure, including the minimum bill provision, retroactively. See Florida Gas Transmission Co. v. Federal Energy Regulatory Comm'n, 741 F.2d at 1311. That the minimum bill issue was severed and dealt with separately from the remainder of the rate increase filing in no way eliminated or limited the Commission's authority to order refund. The Commission's authority was preserved as to each issue until the issue was resolved.
 
 B.
 
 23
 Our consideration of the Commission's power to order the modification retroactively is complicated by the fact that, during the pendency of the Sec. 4 proceeding, CIG and Natural entered into a new service agreement which was accepted by the Commission pursuant to Sec. 7 of the Natural Gas Act. The questions raised by these circumstances are (1) whether the Commission's suspension order applies to the new agreement between CIG and Natural, and (2) whether Commission acceptance of that agreement in the Sec. 7 proceeding precludes the Commission from ordering retroactive modification of the minimum bill.
 
 
 24
 The minimum bill which was in effect at the time the Commission suspended the rate increase was superseded by an identical provision in the subsequent service agreement between CIG and Natural. The new agreement was executed three months after the Commission suspended the rate increase. Since the Commission may order retroactive refund only where a company's rates have been suspended pending Sec. 4 review, Moss v. Federal Power Comm'n, 502 F.2d 461, 469 (D.C.Cir.1974), rev'd on other grounds, 424 U.S. 494, 96 S.Ct. 1003, 47 L.Ed.2d 186 (1976), and the new minimum bill provision was enacted after the Commission suspension, the question is raised whether the suspension order applies to the new minimum bill provision.
 
 
 25
 The new minimum bill provision is identical in all respects to the bill in the service agreement in existence when CIG filed its rate increase. The lone difference between the two service agreements is that the new agreement entitles Natural to a slightly greater quantity of gas. The new agreement and its minimum bill did not create a new contractual arrangement but rather extended their prior counterparts. The previous agreement and minimum bill were subject to the suspension order. Since the new bill merely extended the operation of the prior bill, the suspension order applied to the new provision and empowered the Commission to act upon it.
 
 
 26
 The Commission's issuance of a certificate of public convenience and necessity under Sec. 7 authorizing CIG to increase its sales to Natural had no effect on the Commission's Sec. 4 refund power. While the Sec. 4 rate proceeding progressed, CIG was involved concurrently in a proceeding under Sec. 7 of the Natural Gas Act. In the Sec. 7 proceeding, CIG sought the issuance of a certificate of public convenience and necessity authorizing a change in the entitlements of several of its customers. The lone change proposed by CIG concerning Natural involved a slight increase in Natural's annual entitlement. The Commission issued a certificate authorizing the changes requested by CIG. CIG and Natural then executed and filed the new service agreement which the Commission accepted. Refund conditions were not attached to the certificate or the acceptance of the new service agreement.
 
 
 27
 Proceedings under Sec. 4 and proceedings under Sec. 7 are separate and distinct. Proceedings under Sec. 4 focus on whether a natural gas company's rates are just and reasonable. 15 U.S.C. Sec. 717c(a); see Federal Power Comm'n v. Hope Natural Gas Co., 320 U.S. at 612, 64 S.Ct. at 292. Proceedings under Sec. 7, on the other hand, focus on whether actions proposed by a natural gas company are "required by the present or future public convenience and necessity" and whether the company "is able and willing properly to do the acts...." 15 U.S.C. Sec. 717f(e); see Federal Power Comm'n v. Hunt, 376 U.S. 515, 525, 84 S.Ct. 861, 867, 11 L.Ed.2d 878 (1964). In a Sec. 7 proceeding, the Commission must consider whether a company has the financial and physical resources to perform a proposed act and how that act will affect the general public and the natural gas industry. Id.
 
 
 28
 Scrutiny of a company's rates and charges often is vital in determining whether proposed actions should be certificated as being in the public interest. See Atlantic Ref. Co. v. Public Serv. Comm'n, 360 U.S. at 390-91, 79 S.Ct. at 1254-55. That determination, however, does not depend on a finding that the rates are just and reasonable. Federal Power Comm'n v. Hunt, 376 U.S. at 523-24, 84 S.Ct. at 866-67; Atlantic Ref. Co. v. Public Serv. Comm'n, 360 U.S. at 390-91, 79 S.Ct. at 1254-55. "[A] section 7 proceeding is not to be equated with a proceeding under section 4 or section 5 to determine a just and reasonable rate." Texaco, Inc. v. Federal Power Comm'n, 290 F.2d 149, 157 (5th Cir.1961). The Commission had no duty to determine the justness of CIG's rate structure and minimum bill in the Sec. 7 proceeding.
 
 
 29
 The sections 4 and 7 proceedings CIG initiated were independent. The foci of the proceedings differed; the factors the Commission considered in making its determinations differed. The Sec. 7 orders did not preclude the Commission from retroactively modifying the minimum bill.
 
 
 30
 In summary, the minimum bill was subject to Sec. 4 review as an integral part of CIG's rate structure, the Commission preserved its power to order refund in its suspension order, and the Commission's Sec. 7 orders had no effect on its Sec. 4 refund power. Therefore, we find that the Commission acted within its authority in ordering retroactive modification of CIG's minimum bill under Sec. 4 of the Natural Gas Act.
 
 II.
 
 31
 Also at issue in this appeal is whether the Commission properly rejected CIG's compliance filing modifying the minimum bill provision. The ALJ concluded that the minimum bill, which required Natural to pay both the fixed and variable costs of gas it did not take, was unreasonable and unjustified by the actual costs CIG incurred in providing service to Natural. He reasoned that CIG should be guaranteed recovery of the fixed costs it incurred in serving Natural. He therefore replaced the minimum bill with a demand charge designed to enable CIG to recover all fixed costs allocable to Natural.
 
 
 32
 The Commission's modification order affirmed the ALJ's finding that the minimum bill imposed by CIG was not just and reasonable. The Commission, however, permitted CIG to retain the minimum bill but ordered CIG to revise it so as to preclude the collection of gas costs and other variable costs. The Commission made this revision retroactive to the effective date of CIG's rate increase. CIG sought rehearing only as to the propriety of ordering retrospective revision of the minimum bill. The Commission denied rehearing, and CIG filed revised rate schedules in an attempt to comply with the Commission's modification order. This filing (1) eliminated all variable costs from the minimum bill provision of the CIG-Natural service agreement, (2) listed the fixed cost component of rate schedules F-1 and H-1, and (3) modified the minimum bill so that deficiency charges incurred by Natural could be assessed at either the F-1 or the H-1 rate (depending under which schedule the deficiency arose) rather than at the lower F-1 rate at which all deficiencies had previously been assessed. The Commission rejected the filing because CIG's modification of the minimum bill to enable recovery of fixed costs at the higher H-1 rate was not permitted by the Commission's modification order. The Commission denied CIG's request for rehearing.
 
 
 33
 The initial question regarding this issue is whether CIG is jurisdictionally barred from seeking judicial review of the Commission's rejection of the compliance filing. CIG's appeal, though procedurally from the Commission rulings rejecting the compliance filing, actually challenges the scope of the Commission's modification order. CIG sought a rehearing within 30 days of the modification order and thus this appeal is not jurisdictionally defective. 15 U.S.C. Sec. 717r(a); Distrigas Corp. v. Federal Energy Regulatory Comm'n, 608 F.2d 25, 27 (1st Cir.1979) (per curiam). However, in its request for rehearing CIG objected only to making the minimum bill modification effective retroactively; CIG did not question the scope of the Commission's modification order. CIG's failure to raise this specific challenge in its application for rehearing thus presents a question of waiver.
 
 
 34
 Courts of appeals generally will not consider an objection to an order of the Commission unless that objection was urged by the aggrieved person in his application for rehearing. 15 U.S.C. Sec. 717r(b); Federal Power Comm'n v. Colorado Interstate Gas Co., 348 U.S. 492, 497-99, 75 S.Ct. 467, 470-71, 99 L.Ed. 583 (1955). Failure to raise an objection in one's application for rehearing waives the objection unless there is a reasonable ground excusing the failure below. Id.; e.g., Atlantic Richfield Co. v. Federal Power Comm'n, 585 F.2d 943, 946 (9th Cir.1978).
 
 
 35
 The circumstances of this case present such a reasonable ground. The Commission's modification order specifically required CIG to amend its minimum bill to eliminate the collection of variable costs. The order did not specifically permit CIG to modify the minimum bill to allow fixed cost recovery at the higher H-1 rate. The broad language used by the Commission in the order, however, raised the possibility of Commission approval of a minimum bill that would recover all fixed costs allocable to Natural. Full recovery of these fixed costs could be had only if deficiencies under the H-1 rate schedule could be assessed under the minimum bill at the H-1 rate. The Commission's rather loose language left it unclear whether CIG could incorporate its higher H-1 rate in its modified minimum bill.
 
 
 36
 This ambiguity excuses CIG's failure to question the scope of the ordered modifications in its application for rehearing following the modification order. It was not until the Commission rejected CIG's compliance filing that the company knew inclusion of the H-1 rate in the minimum bill would not be allowed. CIG did not know that it was aggrieved by the Commission's modification order until the Commission rejected its compliance filing. Since CIG was unaware it was aggrieved, CIG has not waived its right to raise this objection. Cf. Midwestern Gas Transmission Co. v. Federal Energy Regulatory Comm'n, 734 F.2d 828, 832 (D.C.Cir.1984) (when a Commission order clearly aggrieves a person, failure to request a rehearing within 30 days bars judicial review).
 
 
 37
 The question on the merits is how to resolve the ambiguity in the Commission's order. An agency's interpretation of its own order is entitled to great weight. Amoco Production Co. v. Federal Power Comm'n, 491 F.2d 916, 921 (10th Cir.1973) (citing Permian Basin, 390 U.S. at 767, 88 S.Ct. at 1360). When an agency order is ambiguous, a court will uphold the agency's interpretation unless it is arbitrary and capricious. Chesapeake & O. Ry. Co. v. United States, 571 F.2d 1190, 1194 (D.C.Cir.1977). Under this standard, we must uphold the Commission's interpretation of its modification order.
 
 
 38
 First, the Commission rejected the ALJ's use of a demand charge. The demand charge, if implemented, would have allowed CIG to recover all of its fixed costs regardless of the amount of gas Natural purchased. A minimum bill assessing F-1 deficiencies at the F-1 rate and H-1 deficiences at the H-1 rate likewise would have insured CIG full fixed cost recovery. It is reasonable to assume the Commission intended that CIG's fixed cost recovery under the modified minimum bill would differ from the fixed cost recovery under the disapproved demand charge. Requiring CIG to continue to assess all deficiencies at the F-1 rate would result in a different fixed cost recovery than under the demand charge.
 
 
 39
 Furthermore, in its modification order the Commission expressed concern that guaranteed recovery of fixed costs might lessen CIG's incentive to increase sales to Natural or make its operations more efficient. Guaranteeing full fixed cost recovery, as CIG's interpretation of the modification order would do, is inconsistent with this concern. The Commission's interpretation of the order encourages CIG to sell gas to Natural because by doing so CIG can recover its H-1 fixed costs.
 
 
 40
 Finally, in its modification order the Commission deferred investigation of the proper level of fixed cost recovery under the minimum bill until CIG's next rate filing. It is consistent with this deferral to assume the Commission intended its minimum bill modification would eliminate the collection of variable costs but would leave the basic take or pay mechanism intact. Continued exclusive use of the F-1 rate is consistent with this assumption.
 
 
 41
 In light of the considerations detailed above, the Commission's interpretation of its modification order is reasonable. The Commission's determination that the minimum bill should not provide CIG with full fixed cost recovery is rational and supported by substantial competent evidence. The Commission acted within its authority in rejecting CIG's compliance filing.
 
 
 42
 AFFIRMED.
 
 
 
 [1]
 19 F.E.R.C. p 61,071 (issued April 28, 1982)
 
 
 [2]
 22 F.E.R.C. p 63,040 (issued January 28, 1983)
 
 
 [3]
 22 F.E.R.C. p 61,330 (issued March 10, 1983)
 
 
 [4]
 25 F.E.R.C. p 63,012 (issued October 18, 1983)
 
 
 [5]
 27 F.E.R.C. p 61,315 (issued May 25, 1984)
 
 
 [6]
 During the pendency of the Sec. 4 proceeding, Natural decreased its purchase of gas below 90% of its entitlement, triggering the minimum bill pay provision. By ordering retroactive, rather than prospective, modification of the minimum bill, the Commission precluded CIG from collecting approximately $20 million in deficiency charges Natural incurred prior to the Commission's modification order
 
 
 [7]
 28 F.E.R.C. p 61,083 (issued July 23, 1984)
 
 
 [8]
 29 F.E.R.C. p 61,124 (issued October 31, 1984)
 
 
 [9]
 30 F.E.R.C. p 61,112 (issued February 1, 1985)
 
 
 [10]
 19 F.E.R.C. p 61,283 (issued June 24, 1982)
 
 
 [11]
 21 F.E.R.C. p 62,263 (issued November 1, 1982)